## WRIGHT INV. CO. v. POWELL et al.
### No. 2398.

Court of Civil Appeals of Texas. El Paso.
April 10, 1930.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, for plaintiff in error.

Hamp P. Abney, Jr. and Locke, Locke, Stroud & Randolph, all of Dallas, for defendants in error.

PELPHREY, C. J.

This suit was filed in the county court at law, No. 2, of Dallas county, Tex., against the firm of Powell & Carley, Floyd G. Betts, and the Federal Reserve Employees' Savings & Investment Association, seeking judgment for an amount due on a note executed by R. D. Powell to Powell & Carley and assigned to Wright Investment Company, and for the foreclosure of a chattel mortgage lien on a Buick automobile, engine No. 1999225.

Plaintiff in error, for the purposes of this opinion, will be referred to as the company, and the Federal Reserve Employees' Savings & Investment Association will be referred to as the association.

The company alleged, in its first amended petition that it was a private corporation engaged in buying and selling notes secured by chattel mortgages; that on or about May 9, 1928, the firm of Powell & Carley sold to R. D. Powell the car in question, and took in part payment therefor Powell's note payable to Powell & Carley, or order, in the sum of $981; that said note was secured by a chattel mortgage on the Buick car; that thereafter, before default and before maturity, and for a valuable consideration, Powell & Carley transferred said note and mortgage to the company; that the company was the owner and holder of the note and mortgage, which mortgage had been duly recorded in the chattel mortgage records of Dallas county; that Powell paid four installments on the note and then defaulted; that the note had been declared due and placed in the hands of an attorney for collection; that the amount due on the note was $653.55, and the value of the car at the time of filing suit was $725; that R. D. Powell used and drove the Buick car as a family car for himself after the execution of the mortgage; that some time in July or August, 1928, without the knowledge or consent of the company, Powell surreptitiously and fraudulently transferred the Buick car to Floyd G. Betts; that the company's chattel mortgage was of record at the time and Betts was charged with knowledge thereof; that Betts, without the knowledge or consent of the company, removed the car to Anderson county, Tex.; that, upon notice of the possession of the car in Anderson county, the company filed its mortgage for record in said county, and made demand upon Betts for the car, which he refused; that Betts was driving and using the car, and depreciating the value of the company's security, and had no property in the state subject to execution out of which the company might satisfy its indebtedness; that, after Betts came into possession of the car, he mortgaged it to the association, and that the association was claiming an interest in or lien on the car; that the company was entitled to have judgment for its debt against Powell & Carley, Betts, and the association, for which it prayed.

The company also prayed for the appointment of a receiver to take possession of the car and hold same subject to the orders of the court.

The company further alleged that R. D. Powell was notoriously insolvent and his whereabouts were unknown.

The court appointed the receiver as prayed for, but later the car was returned to Betts upon the giving of a bond. Powell & Carley, though cited, failed to answer.

Betts answered by general demurrer, general denial, and set up the defense that he was an innocent purchaser without notice from Powell & Carley; that the alleged sale from Powell & Carley to Powell was fraudulent and void; that Powell & Carley, after the fraudulent sale from them to Powell, and after the company had taken its mortgage thereon, exposed the car for sale in the daily course of its business; that by reason thereof the company's mortgage was void; that the company had knowledge of the car being exposed for sale after it had taken its mortgage; that it was contemplated at the time the mortgage was taken that the car would be so exposed, and that by reason thereof the company was estopped to assert the validity of its mortgage.

The association filed a general demurrer, a general denial, and specially alleged that it was an innocent lienholder, for value; that, from the time Powell & Carley came into possession of the car, they continuously remained in possession thereof until the sale to Betts, and that during said time it was daily exposed

322

for sale by them in the course of their business; that Betts was an innocent purchaser of the car; that at the time of making the purchase of the car Betts borrowed from the association $800, which was used as part of the purchase price of the car, and gave his note and chattel mortgage on the car therefor; that the sale from Powell & Carley to Powell was fictitious, and that the company had knowledge thereof; that Powell & Carley, after the company had taken its mortgage thereon, at all times kept the car in their possession and exposed it for sale in the regular course of business; that it was the custom and practice for Powell & Carley to collect and remit to the company on notes held by the company, and that thereby the company authorized Powell & Carley to collect notes and repossess cars and sell them; that the company, by virtue of the custom and practice, is estopped to deny the acts of Powell & Carley.

The company in supplemental petitions denied the allegations of Betts and the association, and further alleged that it was an innocent purchaser for value of the note and mortgage held by it, having paid therefor a valuable consideration before maturity without notice of any defect in the title to said note or mortgage or the title of Powell to the car; denying that it had any notice or knowledge or any claim or attempt on the part of Powell & Carley to expose the car for sale; and specifically denying that it ever authorized Powell & Carley or any agent for them to collect any notes owned by it or to have any dealings pertaining to said notes.

The following issues were submitted to the jury:

"Special Issue No. 1: Was the Buick coupe involved herein sold by the partnership firm of Powell & Carley to R. D. Powell in May, 1928?

"Special Issue No. 2: At the time the mortgage was given by R. D. Powell to Wright Investment Company did both Powell and Wright Investment Company contemplate that the automobile involved herein would remain in the possession and control of the partnership of Powell & Carley to be daily exposed for sale by said partnership in the regular course of business of said partnership?

"Special Issue No. 3: Was the Buick Automobile involved in this suit daily exposed to sale in the regular course of business by the partnership of Powell & Carley at the date defendant Floyd G. Betts purchased said car?"

In response to those issues, the jury found that the car was not sold by Powell & Carley to Powell; that at the time the car was mortgaged to the company it was contemplated by both parties that the car would remain in the possession of Powell & Carley, and be by them exposed for sale in the regular course of their business; and that it was being so exposed at the time of the purchase by Betts.

In the judgment rendered the company was decreed a recovery from Powell & Carley and Carley, individually, for $783.45, and for a foreclosure of the chattel mortgage on the automobile, but only to the extent of the interest of Powell & Carley and Carley, individually; that it take nothing as against Betts and the association, and that its chattel mortgage lien, be as to them void and of no effect; that Betts and his sureties on the bond be released and the bond canceled; and that the chattel mortgage lien of the association be declared a valid and subsisting first and prior lien against the automobile. After its motion for a new trial was overruled, the company has appealed.

### Opinion.

Plaintiff in error seeks a reversal of the judgment on the following grounds: (1) That the court should have instructed a verdict in its favor; (2) that the court erred in submitting to the jury the three issues above; (3) that the court should have submitted its special requested issue No. 1; that the jury's findings on the three issues are contrary to the evidence.

We have reached the conclusion that the proper disposition of this appeal depends upon whether or not the evidence adduced shows a sale of the car in question by Powell & Carley to Powell.

If there was such a sale, then the mortgage given to Powell & Carley by Powell was valid, and, under the assignment from Powell & Carley to plaintiff in error, it would be entitled to a foreclosure of such mortgage against any subsequent purchaser of the car, the record showing that such mortgage was duly recorded. On the other hand, if Powell was not the owner of the automobile at the time of the execution of the mortgage by him to Powell & Carley, the giving thereof conferred no rights on them, and, under their assignment, no rights were transferred to plaintiff in error.

The jury found in response to special issue No. 1 that there was no such sale, and plaintiff in error contends that there is no evidence in the record to support such finding, but that the uncontradicted evidence shows that there was a sale. Carley testified to having bought the car from McCue for the firm; that later Powell told him he wanted to take the car for his own use, to which Carley assented on condition that he receive a certain profit on the deal; that Powell agreed to and did charge his personal account with the amount paid out on the car, and assumed the mortgage on the car; that Powell had disappeared, owing him $11,000.

Wright testified that, when the note and mortgage were assigned to plaintiff in error,

323

Powell told him that he was taking the car for his own use and for his wife.

As tending to show that no sale was made by Powell & Carley to Powell, the following -facts are present: That there is no showing that a bill of sale from Powell & Carley to Powell was ever executed as required by article 1435, Penal Code; that the car was in and around the place of business of Powell & Carley from May to July, 1928, and was offered for sale as the property of the firm on several occasions; that the car was advertised along with other cars belonging to them by Powell & Carley; that the bill of sale to Betts was executed by the salesman on behalf of Powell & Carley; that the check received from Betts was deposited in the bank to the credit of Powell & Carley; and that Powell himself received such check from Betts.

We are of the opinion that the above facts are sufficient to raise an issue of fact which was properly submitted to the jury, and that they are sufficient to support the jury's finding that no sale took place. If we are correct in this, then Powell was not the owner of the car at the time of the execution of the mortgage, and Powell & Carley acquired no rights by virtue of the mortgage which they could transfer to plaintiff in error.

The finding of the jury on this issue, we think, determines the rights of the parties as far as plaintiff in error, Betts, and the association are concerned, and the other questions become immaterial.

The assignments are accordingly overruled, and the judgment of the trial court is affirmed.