## CITIES SERVICE OIL CO. v. HEFFINGTON.

### No. 8504.

Court of Civil Appeals of Texas. Austin.

Aug. 4, 1937.

Phillips, Trammell, Estes, Edwards, & Orn and James B. Henderson, all of Fort Worth, for appellant.

Polk Shelton & Emmett Shelton, of Austin, for appellee.

BLAIR, Justice.

Appellee, Steve Heffington, Jr., sued appellant, Cities Service Oil Company, to recover $379.24, the purchase price of certain filling station equipment sold by appellee to appellant. A jury trial upon special issues resulted in judgment for appellee as prayed.

Before the check issued by appellant in payment of the equipment was delivered to appellee, the equipment was destroyed by the flood waters of the Colorado river; and appellant contends that the undisputed evidence showed: (1) That the sale of the equipment was a cash sale, and that title had not passed at the time it was destroyed by the flood; and (2) that if title had passed, appellee was the bailee of the equipment and negligently permitted it to be destroyed by the flood.

The jury found each of these issues against appellant, and the evidence sufficiently supports such findings.

Prior to June 7, 1935, appellant's agent, Ritter, approached appellee to purchase the equipment in controversy for the sum of $379.24. Appellee could not sell the property to appellant because he had given an option to Mrs. Bettie Hemphill to purchase the property, which was located at her filling station near the Montopolis bridge near Austin, and where she had been selling the products of appellee through such equipment. On June 7, 1935, Mrs. Hemphill wrote appellee that she had assigned her option to purchase the property to appellant, and that thenceforth she would buy her petroleum products from appellant, and with which she would service the equipment. On June 10, 1935, appellee and appellant's agent agreed upon the sale of the property to appellant, appellee delivering to the agent an invoice of the property, stipulating therein as follows:

"Left installed with Mrs. Bettie Hemphill Montopolis Road Austin, Texas. Said equipment is not to be serviced by Cities Service Oil Co. or its agents till payment has been paid, at the main office of Heffington Pet Co. located at 2401 E. 6th St., Austin, Texas."

At the time of the delivery of the invoice, appellee requested the agent of appellant to pay for it by his personal check, which he refused to do. Appellee then requested appellant to draw a draft upon the home office of appellant at Fort Worth, Tex., in payment of the equipment. This the agent refused to do, claiming he had no authority to draw such draft, but agreed that he would mail the invoice to appellant at Fort Worth, and would receive its check within six or eight days in payment of the equipment; and if payment were further delayed, interest would be paid on the purchase price. Appellee testified that he placed the stipulation on the invoice not to service the equipment until it was paid for, in order to secure payment of the equipment as soon as possible; but intending that title pass to the property at the time of the delivery of the invoice. He did this because previously appellant had been slow in payment of its transactions with appellee. Appellant issued its check soon after the invoice reached its office, and mailed same to Ritter, its agent at Austin, for delivery to appellee. The agent did not deliver it to appellee, because the flood destroyed the property on or about June 15, 1935. In the meantime, appellee, on June 12, 1935, wrote appellant by registered letter at Austin, addressed to its Austin office, informing it of the danger of the property being destroyed by flood, and stating that he considered it appellant's property, and that it was its duty to protect the property. Appellant's agent testified that he did not receive the letter until after the property had been destroyed by the flood. Appellee testified that he did not take any further steps to protect the property, because he did not consider it his property, and did not know if Mrs. Hemphill would permit him to take possession of the property, she having exercised her option to purchase the equipment by assigning it to appellant, and notifying appellee that thereafter she would service only appellant's products through the equipment. Appellee further testified that where equipment was in the possession of a filling station operator, the code prevailing only required the seller to deliver an invoice to a purchaser in order to transfer possession of the equipment.

It is the contention of appellant that the stipulation in the invoice that the "equipment is not to be serviced * * * till payment has been paid," conclusively showed that the parties intended the sale to be for cash, or cash on delivery; that payment was a condition precedent to passing of title, and until payment the contract was executory; and that in consequence the loss of the equipment by flood before payment therefor fell upon appellee under the rule that risk of loss as between a buyer and purchaser must be borne by the party who had title to the equipment at the time the loss occurred. We do not sustain the contention.

The rule is settled that in absence of a specific stipulation in the sale of personal property, title passes in accordance with the intention of the parties as manifested by the terms of the agreement and the circumstances surrounding its execution and consummation. Scott & Mayhall v. Lubbock Grain & Coal Co., 113 Tex. 127, 252 S.W. 164; Atlas Torpedo Co. v. United States Torpedo Co. (Tex.Civ.App.) 15 S.W.(2d) 150. It is also the settled rule that the strongest indicia of ownership of personal property is possession, but that title may pass without change of possession, in accordance

with the intention of the parties. 37 Tex. Jur. 441, 442, and cases there cited.

■ Under the facts above detailed, the jury was justified in finding that the sale was not a cash sale, in the sense that title passed only upon payment of the purchase price; that the contract was not executory; and that possession of the equipment had been delivered to appellant. The invoice stated that the equipment had been "left installed" on the premises of Mrs. Hemphill. Appellee testified that the code under which the oil industry was operating at the time provided, and that it was the understanding and intention of the parties, that the delivery of the invoice under the circumstances stated constituted a bill of sale and a delivery of the property to Mrs. Hemphill for appellant. The undisputed evidence showed that Mrs. Hemphill, who had an option to purchase the equipment and in whose possession it was, notified appellee that she had sold her option to purchase the property to appellant, and that she claimed the right to thereafter service the equipment only with appellant's products. Manifestly, this constituted delivery of the property to Mrs. Hemphill for appellant under the prevailing code, and was at least a strong circumstance tending to show that the parties did not intend to reserve title until the purchase price had been paid. The parties clearly recognized the rights of Mrs. Hemphill, a third person, who had the right to the possession and use of the property; and it will be presumed that they did not make a stipulation on the invoice which might defeat the recognized right of Mrs. Hemphill. Appellee specifically testified that the stipulation not to service the equipment until paid for was intended to secure payment as soon as possible, and was not intended to defer passing of title until the purchase price was paid.

■ The finding of the jury that appellee was not guilty of negligence in not protecting the property from the flood is also sustained by the evidence. The undisputed evidence showed some character of arrangement between appellant and Mrs. Hemphill with regard to her possession of the property for appellant. She wrote appellee prior to the sale that she had the right to assign her option to purchase the property to appellant, that she had done so, and that thenceforth she would accept only appellant's products to be serviced through the equipment. The jury could have inferred from these facts that Mrs. Hemphill and not appellee was in possession of the property for appellant at the time it was destroyed by the flood, and could have therefore concluded and found that appellee was not negligent in failing to protect the property from the flood.

The judgment of the trial court will be affirmed.

Affirmed.