## CROCKETT v. ROGERS et al.

### No. 5720.

Court of Civil Appeals of Texas. Texarkana.

Feb. 13, 1940.

Rehearing Denied Feb. 29, 1940.

186

Grisham & Grisham, of Tyler, for appellant.

Weeks, Hankerson & Potter, Pollard & Lawrence, L. L. James, and William S. Reeves, all of Tyler and H. A. Leaverton, of Longview, for appellees.

HALL, Justice.

This suit was instituted July 13, 1938, by appellant, C. W. Crockett, against Yandell Rogers, Rozel Oil Corporation, L. L. James, and J. D. Stringer, for ¼ interest in the proceeds of the sale of a certain oil and gas lease on 96 acres of land, located in Gregg County, Texas, and to subject certain notes, a part of the proceeds of said sale to the payment thereof. It was alleged by appellant that he, together with appellee Rogers, were joint owners of said oil and gas lease. Appellant's interest therein which he had theretofore assigned to "Yandell Rogers as a matter of convenience and without any consideration

paid whatsoever but to give the said Yandell Rogers an opportunity to better handle same and more conveniently operate same both for himself and for the plaintiff; that it was then and there understood that Yandell Rogers should proceed to develop the said lease, that he might borrow money for the development thereof and obtain credit in connection with the development of the said lease * * *"; that after all said indebtedness was liquidated appellant was to own ¼ of said lease "or the proceeds thereof." Appellant alleged further that "thereafter the said Yandell Rogers and/or Rozel Oil Corporation with the consent of plaintiff (appellant, Crockett) sold, transferred and assigned said lease to the Mar-Tex Oil Company * * *." A large portion of the purchase price for said lease was represented by notes referred to hereafter as the Mar-Tex notes. Appellant sought and obtained a receiver to take charge of the Mar-Tex notes, and an injunction prohibiting a multiplicity of suits respecting same. It was stipulated in the court below that Yandell Rogers owned, controlled and dominated the Rozel Oil Corporation and that it was his alter ego, so reference hereafter shall be made to Yandell Rogers alone.

Judgment by default was rendered against Yandell Rogers for the sum of $32,951.64, same being ¼ of the purchase price paid by Mar-Tex Oil Company for said lease. The judgment provided further:

"that plaintiff's interest in said notes, now listed with the receiver in this cause, be and the same is hereby fixed and established in said amount.

"It is further ordered that a sufficient number of said notes to satisfy said judgment be transferred and assigned by the receiver, H. S. Gibbs, to the plaintiff to satisfy the judgment. It is further ordered that the receiver, in lieu of selling the notes in satisfaction of the judgment to plaintiff, may sell the said notes, any and all or a sufficient number of same, to satisfy this judgment, subject to the following limitation: the sale and delivery of said notes or the proceeds thereof in satisfaction of this judgment, shall be suspended by said receiver until the court shall determine the rights, if any, of certain intervenors in said cause."

Numerous persons were permitted to intervene, each setting up a claim against Yandell Rogers, some of whom claimed a preference lien on the Mar-Tex notes by virtue of certain dealings with Rogers on the faith of his apparent ownership of said notes. Each of the preferred creditors alleged that his claim of priority to the Mar-Tex notes was based upon a valuable consideration; that each was an innocent assignee or pledgee of the notes from Yandell Rogers without notice of any claim to said notes by appellant; and that appellant was estopped to assert any claim to the Mar-Tex notes which would defeat the claim of these preferred creditors. After the entry of the judgment referred to above, and to facilitate a hearing on the numerous claims presented by the various intervenors, the trial court appointed the Hon. Roy Butler Master in Chancery. On January 21, 1939, after a full hearing, the master filed his report giving priority to the claims of appellees, Bethlehem-International Supply Company, Roy Davis, H. A. Leverton, Tyler State Bank & Trust Company, W. F. Bridewell, P. H. Dowlearn, Pittsburg Pipe & Supply Company, to the Mar-Tex notes as against appellant, Crockett. These appellees will be hereafter referred to as preferred creditors.

Appellant, Crockett, filed exceptions to the master's report which were in part sustained by the Hon. Walter G. Russell, District Judge, in the judgment entered by him disposing of the various intervenors. On April 15, 1939, soon after the entry of that judgment, Judge Russell resigned. A motion for new trial was filed by the aggrieved parties and was, on April 22d, granted by the Hon. Bascom Gist who had succeeded Judge Russell. On April 4th, some two weeks before Judge Russell's resignation, he ordered the receiver to institute suit to foreclose the Mar-Tex notes and appointed Grisham & Grisham as attorneys to represent the receiver in said foreclosure suit. On the same day this foreclosure suit was filed he also entered a restraining order against interference with the receiver in the foreclosure, etc. On July 13, 1939, appellant, Crockett, filed suit to foreclose the Mar-Tex notes, and for injunction. That suit was dismissed by the trial court on July 21st.

The case at bar was submitted to the court without a jury, and on July 22d, after a full hearing, judgment was entered by Judge Gist in substantial accord with the master's report granting priority

in the order named to: (1) Tyler State Bank & Trust Company, save as to two notes, one for $700 and the other for $2,000; (2) W. F. Bridewell; (3) Roy Davis; (4) H. A. Leverton; (5) Bethlehem-International Supply Company for Mar-Tex notes No. 20 and No. 21, held by it; (6) P. H. Dowlearn; and (7) Pittsburg Supply Company. These intervenors were given priority to the Mar-Tex notes over appellant, Crockett, and Crockett was held to be estopped to assert any claim to the Mar-Tex notes until the above-named intervenors were paid. These preferred creditors were first required to exhaust all other collateral held by them, also Yandell Rogers' ¾ interest in the Mar-Tex notes before proceeding against the ¼ interest in said notes belonging to appellant, Crockett. The judgment previously entered by Judge Russell in favor of Crockett against Yandell Rogers for his ¼ interest in the sale price for the oil lease was carried forward and entered in this judgment. The receiver's suit to foreclose the Mar-Tex notes was dismissed without prejudice. The receiver was discharged, as was also the master in chancery, the fee of each being fixed by the court below. The injunction theretofore granted was dissolved and the court costs were decreed against appellant, Crockett, and Yandell Rogers. "It being the purpose of this judgment to make a full, final and complete determination of all matters and things at issue herein." Appellant duly excepted to the entry of this judgment and the cause is now properly before this court on appeal.

At the outset we are met with numerous objections and exceptions directed to the propositions and assignments of appellant, Crockett, which objections and exceptions, in our opinion, are not without merit, but we have concluded, however, to consider the case on its merits.

Appellant's fourteenth assignment is, "No case was made by pleading or by proof authorizing priority in payment to the intervening creditors, viz.: Tyler State Bank & Trust Company, W. F. Bridewell, Jr., International Supply Company and/or Bethlehem-International Supply Company, P. H. Dowlearn, H. A. Leverton, Roy Davis, and Pittsburg Pipe & Supply Company." On November 27, 1935, appellant by quitclaim deed sold and released unto Yandell Rogers all his interest in the oil and gas lease theretofore jointly owned by them, and about one year thereafter Yandell Rogers, with the consent of appellant, sold said lease to Mar-Tex Oil Corporation and as a part of the consideration therefor received the Mar-Tex notes made payable to Rogers' company, Rozel Oil Corporation. It is undisputed that the preferred creditors dealt with Yandell Rogers with respect to the Mar-Tex notes without any notice of any claim thereto by Crockett. It is also undisputed that some character of consideration passed from each of the preferred creditors to Yandell Rogers upon which they based their prior claim to the Mar-Tex notes. The sufficiency of this consideration is contested by appellant. However, the master in chancery found that the consideration was sufficient as to each of the preferred creditors and the trial court in its final judgment herein decreed that "the master's report should be and is hereby sustained in accordance with the terms and provisions of this judgment." So it remains to be determined whether the acts of appellant, Crockett, in clothing Yandell Rogers with the apparent title to the oil lease, and in permitting him to sell it and receive and retain as a part of the consideration therefor the Mar-Tex notes, under the undisputed facts in this record, estop him from asserting a claim to an interest in said notes which would defeat the claims of the preferred creditors herein. Crockett was not ignorant of the acts and conduct of Rogers in relation to their oil and gas lease. He testified at one of the hearings that during the very time the preferred creditors were dealing with Rogers he was making Rogers' office his headquarters. Part of this time he was living in Rogers' home. Appellant knew of the sale of the lease to Mar-Tex Oil Corporation. He knew of the execution of the Mar-Tex notes and that Rogers held them. Crockett also knew that said notes were payable to Rogers' company. In addition to these facts, appellant's attorney made the concession during a hearing in the court below as shown by the following colloquy:

Mr. Grisham (attorney for appellant): "We have plead Yandell Rogers and C. W. Crockett were partners in this special enterprise. They were not general partners, no allegation by any creditor that they were general partners, only partners in the Still lease. In order there might not be any controversy, I will say I plead that under that

was theory of the plaintiff and did trust Yandell Rogers to handle the matter and when Yandell Rogers pledged if he did pledge, there is no escape from the proposition that they would be innocent pledgees in the course of business and would be ahead of Yandell Rogers and ahead of C. W. Crockett. In other words, C. W. Crockett would stand into bear same that Yandell Rogers would with reference to the notes that Rogers actually pledged. Should not be any controversy with reference to that. That is conceded. I well understand if we are special partners with Yandell Rogers, though he might have exceeded his duty and bounds to us, and didn't properly regard our interests, yet, if he went out and pledged our notes with innocent parties, like Mr. Stringer and others, if he bound himself by these notes, he bound us if based upon a valid consideration and elements of contract actually therein."

Mr. James (attorney for appellees Bethlehem-International Supply Company and P. H. Dowlearn): "Don't see how we could prove any more than that."

Mr. Grisham: "Should not be any contrariety of opinion on that."

Mr. Grisham (attorney for appellant): "I will make this statement for the benefit of the Court and counsel; that as far as Mr. Stringer, Mr. Bridewell, International Supply Company, are concerned, it is our information—"(interrupted).

Mr. Pollard (attorney for appellee Bank): "That also includes Tyler State Bank & Trust Company?"

Mr. Grisham: "When I speak of Mr. Stringer, I thought he was handling it. Didn't know Tyler State Bank had any interest except Mr. Stringer handling it. When I say Mr. Stringer, if the Bank is interested, it does that. It is my information that these three parties have such interests in these notes, pledged in due course of business as pledgees. The testimony, as I understand, showed that on the former hearing and we are not in position to contest that at this time and not attempting to do so."

True enough, appellant says he knew nothing about Rogers' manipulations of the Mar-Tex notes. This may be true, but with the same emphasis it can be said that neither did the preferred creditors know of his, Crockett's, undisclosed interest in the Mar-Tex notes, on the faith of which the court below found they were dealing with Rogers. This is shown by the following statement by appellant's attorney:

Mr. Grisham: "For the benefit of the Court and counsel, we have not alleged we broadcast this partnership, nor are we claiming we did in the pleadings or anywhere else; not claiming any of these had notice until we filed this lawsuit. Don't see where it is relevant but want the Court to have all the testimony he wants in this case."

■■ Appellant did not challenge Rogers' authority over the notes in controversy nor assert any interest therein until he filed this suit, except his statement that he informed the son of the President of the Pittsburg Supply Company of his interest. However, both the master and the trial court found against this contention. Some of the preferred creditors contended that they extended Yandell Rogers' credit in this belief that he owned the Mar-Tex notes which he assigned and pledged to them to secure said loans. The other preferred creditors contended that they extended the time payment on obligations owing to them by Rogers and either refrained from taking legal action against him or dismissed suits already brought against him on the faith that Rogers owned the Mar-Tex notes which he assigned to them in consideration of such forbearance. We have concluded that there is sufficient testimony in this record to support the master's findings of fact and the judgment of the court below to the effect that the preferred creditors dealt with Rogers on the faith of his ownership of the Mar-Tex notes and either extended him credit or refrained from taking legal action against him on account of the pledging or assigning of said notes to them by Rogers. In the circumstances as detailed above, equity will effectively prevent appellant from asserting a claim to the Mar-Tex notes superior to that of the preferred creditors. Appellant by his acts brought about the situation that gave rise to this lawsuit by assigning his interest in the oil and gas lease to Rogers, in permitting Rogers to sell said lease to Mar-Tex Oil Corporation and in allowing Rogers to receive these notes representing part of the purchase price, made payable to Rogers' company, and left in Rogers possession. This record reflects no word spoken or act done by appellant, Crockett, importing notice of his interest in the Mar-Tex notes to these preferred creditors. When he should have spoken he was silent; when he should have

acted he failed. Now that he desires to speak and act, equity will seal his lips and stay his hand. In Kempner v. Huddleston, 90 Tex. 182, 37 S.W. 1066, 1067, our Supreme Court quoting with approval from Bigelow on Estoppel, states: "That where the true owner of property holds out another, or allows another to appear, as the owner of, or as having full power of disposition over, the property, the same being in the latter's actual possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected; or, where others are innocently induced to acquire rights in derogation of the secret or undisclosed claims of these· who caused such action, the rights so acquired are secure, whether contested at law or in equity. Such rights do not depend upon the actual title or right or authority of the party with whom they have directly dealt, but are derived from an act of the real owner which precludes him from disputing against them the existence of the title or right or power which he caused or allowed to appear to be vested in the party making the sale."

See, also, Hillmer v. Asher, Tex.Com. App., 29 S.W.2d 1011; May v. Martin, 32 Tex.Civ.App. 132, 73 S.W. 840, writ refused; B. F. Avery & Sons v. Collins, 62 Tex.Civ.App. 313, 131 S.W. 426; Western Nat. Bank of Hereford v. Laughlin, Tex. Civ.App., 184 S.W. 1101, writ dismissed; First State Bank v. First Nat. Bank, Tex. Civ.App., 282 S.W. 846, writ dismissed.

■ Appellant asserts that the failure of the preferred creditors to show that their dealings with Rogers were in furtherance of the joint enterprise of Rogers and appellant relieves him from the operation of the doctrine of estoppel in pais. We do not agree with this contention. Whatever disposition Rogers made of the Mar-Tex notes, under the facts in this case, to innocent purchasers for value, appellant would be bound thereby. This fact seems to be admitted by appellant with respect to the outright assignment by Rogers of note No. 9 of the Mar-Tex series to Southwest Investment Company, and also by the concession of appellant's counsel in the court below heretofore referred to.

■ Appellant contends, further, that the Mar-Tex notes were not legally assigned because the assignments or pledges of said notes were not in compliance with the Negotiable Instruments Act. Vernon's Ann.Civ.St. art. 5932 et seq. We do not think it is a question here of appellees' failure to comply with the Negotiable Instruments Act in accepting assignments of the Mar-Tex notes from Rogers to secure their claims, if failure there was; but it is one of equitable estoppel which precludes appellant from asserting any claim to said Mar-Tex notes as against appellees as creditors of Rogers. Kempner v. Huddleston, supra. In Marling v. FitzGerald, 138 Wis. 93, 120 N.W. 388, 391, 23 L.R.A.,N.S., 177, 131 Am. St.Rep. 1003, it is said: "It does not interfere with the well-established principle, that where the true owner holds out another, or allows him to appear as the owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence he caused or allowed to appear to be vested in the party making the conveyance."

■ Appellant complains of the action of the trial court in dismissing the receiver's and appellant's suits to foreclose the Mar-Tex notes, and in discharging the receiver, and dissolving the injunction. In our opinion, in the circumstances presented by this record, this does not present error. After the trial court had rendered judgment finally disposing of all persons, matters and things in the case, it was no longer necessary to continue the receivership or the injunction, Texas Trunk R. Co. v. Lewis, 81 Tex. 1, 16 S.W. 647, 26 Am. St.Rep. 776; Tex.Jur., vol. 36, p. 269, and the master in chancery having made his findings of fact and conclusions of law, his services were no longer necessary. The court that authorized the receiver to file the suit to foreclose the Mar-Tex notes certainly had the right to dismiss it. These are matters of discretion lodged with the trial court, and we can not say that abuse in exercising such discretion has been shown.

■■ In dismissing the suit brought by appellant to foreclose the Mar-Tex notes the court below declared in its order of dismissal that said suit was an intervention in the main suit, was instituted without any authority from the trial court, and was filed too late. If this fact be true, then the trial court would have a right to dismiss said

intervention filed without his permission and coming too late. If it be an independent suit, as claimed by appellant, then there is no appeal here from the order of dismissal, and we would have no authority to pass upon the matter. In either event the matter is closed.

We have carefully examined all other assignments brought forward by appellant and find that they do not present error, and they are respectfully overruled.

The judgment of the trial court is affirmed.