### NICEWARNER v. ALSTON et al.

#### No. 6037.

Court of Civil Appeals of Texas. Amarillo.

Feb. 20, 1950.

Rehearing Denied March 27, 1950.

Klett, Bean, Evans & Justice, Lubbock, M. C. Ledbetter, Morton, for appellant.

Fred Stockdale, Morton, R. L. Graves, Brownfield, for appellee.

STOKES, Justice.

On December 18, 1948, the Chevrolet Motor Division of General Motors Corporation, as manufacturer, sold and delivered to E. D. Mahan, an automobile dealer at DeLeon, Texas, a Chevrolet automobile and delivered to Mahan the usual manufacturer's certificate as evidence of the title. Thereafter, the date not shown by the record, Mahan sold and delivered the automobile to W. V. Young, an automobile dealer at Abilene, and as evidence of the title, he delivered the manufacturer's certificate to the purchaser. On January 3, 1949, Young sold the automobile to O. A. Alston, an automobile dealer at Morton in Cochran County. In payment for the car Alston gave to Young a draft upon the First State Bank of Morton for the sum of $1950, to which the manufacturer's certificate was attached. Young deposited the draft for collection in the Citizens' National Bank of Abilene and the bank cleared it through the First National Bank in Dallas. The draft, with the certificate attached, reached the First State Bank of Morton on January 8, 1949 and was paid by the bank on that day. On January 5, 1949, two days after Alston purchased the car and three days before the draft reached the First State Bank at Morton, Alston sold the automobile to the appellees, E. L. Winkles and his wife, Reta. When the sale was agreed upon Alston went with Winkles and his wife to the Tax Collector's office at Morton to have the car registered through the State Highway Department and Winkles filled out the customary application therefor and delivered it to the office deputy. She received it and then called for the manufacturer's certificate for the purpose of sending the application and the certificate to the Highway Department at Austin as a basis for the regular registration certificate. The deputy collector was informed by Alston that he would bring it to her in a few days and she thereupon attached to the application a slip of paper upon which she noted "Hold for mgfc. cert. Fees paid," and laid them aside pending delivery to her by Alston of the Manufacturer's certificate. The car delivered by Alston to appellees, Winkles and his wife, and they took it to their home at Brownfield where they kept it and used it until February 17, 1949, when it was taken from them by the sheriff of Cochran County under a writ of sequestration sued out by appellant, J. B. Nicewarner, in this suit.

The record shows that on January 8, 1949, the day upon which the First State Bank accepted and paid the draft given by Alston to Young for the car, Alston executed to the bank and appellant, J. B. Nicewarner, who was connected with the First State Bank, a chattel mortgage on the Chevrolet automobile in question and another automobile, to secure his note to the bank of that date, payable January 18, 1949, in the sum of $4420. The principal of the note consisted of the amount due on the draft for $1950 given by Alston to Young and the purchase price of another automobile for which Alston had drawn another draft on the bank. The note and chattel mortgage were afterwards transferred and assigned to appellant by the bank. The note was not paid when it matured but, on February 15, 1949, Alston paid $1000 on it and on February 16, 1949, appellant filed this suit against Alston, Mahan, Young and appellants Winkles and his wife, and, on the same day, he sued out the writ of sequestration under which, on the next day, the sheriff of

Cochran County took possession of the automobile.

In his second amended original petition, upon which the case was tried, appellant set out the facts concerning the various sales of the automobile, the execution of the note by Alston, his failure to pay it, and alleged that appellees were not innocent purchasers of the car because when they purchased it from Alston, they did not demand nor receive the manufacturer's certificate or any other written evidence of title. He alleged further that title to the car legally passed to him because the manufacturer's certificate, which was the only evidence of the title, was attached to the draft which was paid and that, while the certificate did not contain an endorsement of the various sales of the car, its being attached to the draft was tantamount to such an endorsement and that the endorsement required by the statute was accomplished by the attachment of the certificate to the draft and to the note executed by Alston and the retention by appellant and the bank of the note and manufacturer's certificate. He prayed for judgment against Alston for the balance due on the note, for foreclosure of the chattel mortgage lien and his asserted pledgee's lien upon the automobile and the evidence of title thereto and for general relief.

The pleadings of the defendants in the case are lengthy and we do not deem it necessary to analyze them. Suffice it to say that proper issues were drawn, and the case was submitted to a jury upon special issues. In answer to the special issues the jury found that Alston gave to appellant the note of $4420, the chattel mortgage and the manufacturer's certificate in connection with, and as security for, the loan of $4420; that Alston paid Young for the car by giving to Young the draft with the manufacturer's certificate attached; and that Alston had not received nor had in his possession the manufacturer's certificate at the time he sold the automobile to appellees.

While the note was made payable to the bank, and the chattel mortgage was made to both the appellant and the bank,

the transaction seems really to have been, and was treated by all of the parties as, one between Alston and appellant, Nicewarner, insofar as those two documents were concerned.

Before the case was submitted to the jury appellees presented and urged a motion for an instructed verdict in their favor which was overruled. After the verdict was returned appellant urged a motion for judgment to be entered in his favor and appellees presented and urged a motion for judgment non obstante veredicto. Appellant's motion was overruled and appellees' motion for judgment was granted by the court. Judgment was entered in favor of appellant against Alston for the balance remaining due on the note but it denied him foreclosure of his chattel mortgage lien, or any other lien upon the automobile and decreed to appellees the title and possession of the automobile. Appellant filed and urged a motion for a new trial which was overruled and he entered proper exception to the judgment and gave notice of appeal which he has duly perfected.

Appellant contends the court erred in rendering judgment for appellees because, first, Alston did not receive the manufacturer's certificate when he purchased the car; that he did not have any title to it when he attempted to convey it to appellees; and appellees therefore could not rely upon the sale as made to them by him. Secondly, he contends that the act of attaching the manufacturer's certificate to the draft was equivalent to noting on the certificate itself the lien created by the transaction between appellant and Alston and gave constructive notice of such lien to the appellees; and, thirdly, that appellees relied solely upon the affirmative defense that they were innocent purchasers and they waived and abandoned such defense by failing to request a finding of the jury thereon.

Under his first contention appellant asserts that Alston never at any time became the owner of the automobile; that he had no title to it; and therefore he could not convey it to the appellees. In support of this contention, he cites us to such

cases as Seigal v. Warrick, Tex.Civ.App., 214 S.W.2d 883, in which this court held it to be a fundamental principle of law that a person who buys personal property from one who neither owns it nor is authorized by the owner to sell it, receives no title, even though he is a purchaser in good faith. It is true that, if Alston did not own the car, and had no authority to sell it, he could not pass the title to the appellees and his attempted sale of it to them was void and of no force or effect. Section 7 of Article 1436—1, Vernon's Annotated Penal Code provides that the term "First Sale" of a motor vehicle means the bargain, sale, transfer or delivery, with intent to pass an interest therein, other than a lien, of a motor vehicle which has not been previously registered or licensed in this state. Section 27 of the Article requires the owner, as defined in Section 4, to make application to the designated agent in the county of his domicile for a certificate of title for such motor vehicle. In the recent case of Motor Inv. Co. v. Knox City, 141 Tex. 530, 174 S.W.2d 482, 486, the Supreme Court said: "Reading the Act as a whole, we think it clear that every transfer of a motor vehicle, regardless of the number thereof, from manufacturer to dealer, dealer to dealer, and from dealer to 'owner,' as defined in the Act, constitutes a 'first sale,' and that it is not necessary that the vehicle be registered and a certificate of title thereto obtained as a condition precedent to the validity of such 'first sale.'"

■ Alston was a dealer in automobiles as defined in Section 19 of the Act and not an owner thereof, as defined in Section 4. He was not such a person as had title to the vehicle after a first sale thereof because each prior sale or transfer of the car, including the sale to him, was a "first sale" as defined in the statute, and he was not required to procure a certificate of title before selling the automobile to the appellees. His purchase of it was, therefore, not controlled by the provisions of the statute in reference to a "subsequent sale," as defined in Section 8. It is true the transfer of the automobile by Alston to the appellees was not en-dorsed upon the manufacturer's certificate, nor was the certificate delivered by Alston to the appellees when he sold the car to them but, in the case last cited, the Supreme Court observed that there was nothing in the Act which requires these steps to be taken as prerequisites to the validity of such a sale. Such being the case, the sale by Alston to the appellees was not governed by the strict provisions of the statute above mentioned but, rather, by the rules governing ordinary sales of personal property. Under those rules, and the holdings of our courts in many cases, the intentions of the parties control and their intentions are drawn from the circumstances and what was said and done by them in consummating the sale. Alston purchased the car from Young and gave to Young a draft upon the First State Bank of Morton. Young thereupon delivered full and complete possession of the car to Alston. There is no evidence or suggestion in the record that the draft was not delivered to Young and accepted by him in full payment for the automobile. Nothing whatever was said, and no act or circumstance was shown by the evidence which indicated, that possession of the automobile was delivered upon condition that the draft would be paid by the bank. Under such circumstances the title to the automobile passed to Alston at the time it was delivered to him. Lang v. Rickmers, 70 Tex. 108, 110, 7 S.W. 527; Victor Safe & Lock Co. v. Texas State Trust Co., 101 Tex. 94, 104 S.W. 1040; John E. Morrison & Co. v. Murff, Tex. Civ.App., 212 S.W. 212; Farmers' Rice Milling Co. v. Standard Rice Co., Tex.Civ. App., 276 S.W. 904; Young v. Harris-Cortner Co., 152 Tenn. 15, 268 S.W. 125, 54 A.L.R. 516.

■ Appellant bases his contention that the title to the automobile never passed from Young to Alston upon the well-established rule of law to the effect that, upon a sale of personal property for cash, payment is generally a condition of the passing of title and, when a buyer gives a check or draft for the purchase price, and it is accepted by the seller as the means of payment, it consitutes a condi-

tional payment and, as between the parties, payment becomes absolute only when the check or draft is paid. Until such payment title does not pass. These are the rules which govern what is termed over-the-counter sales and sales in which agreements to that effect are made. Alston testified he paid cash for the Chevrolet automobile, and appellant presents this as evidence that it was a cash, or over-the-counter sale, but Alston's testimony that he paid the cash does not, as contended by appellant, mean that it was agreed between them that the sale was upon condition that the actual cash should be first delivered to Young and, therefore, the sale was for cash. He purchased a number of cars from Young and said he paid the actual cash for one of them and he was contending in his testimony that the Chevrolet automobile here involved was the one for which he paid the actual cash. The jury found otherwise and the testimony amply supports the jury's finding. The sale of this particular car was, therefore, not what is termed a cash sale. Young accepted the draft with the certificate attached, deposited it in the Citizens' National Bank of Abilene for collection, and it is apparent from the evidence that both Young and Alston intended that the sale was consummated immediately upon the delivery and acceptance by Young of the draft. Moreover, Young immediately delivered possession of the car to Alston. Under these circumstances, the title to the automobile immediately passed from Young to Alston. Young v. Harris-Cortner Co., supra. This transaction occurred on January 3, 1949. On January 5, two days later, Alston sold the automobile to the appellees and delivered it to them. They paid him $1425 and delivered to him their old car at the price of $800 which fully paid the agreed purchase price. It follows from these observations and transactions that appellees procured title to the automobile on January 5, 1949.

Appellant insists that the case is controlled by the holdings of this court in the recent case of Deahl v. Thomas, Tex. Civ.App., 224 S.W.2d 293. He asserts that the facts in this case are the same as those revealed by the evidence in the Thomas case and that the principles of law there announced are applicable here. In the Thomas case we were careful to point out that the trial court found the sale of the automobile there involved to the dealer, Hicks, was conditioned on the payment of the draft for its purchase price. Moreover, in that case the draft was not paid while in the instant case it was paid upon presentation to the bank. This takes us back to the question of the intention of the parties. In the case of Farmers' Rice Milling Co. v. Standard Rice Co., supra, the Commission of Appeals considered a written contract for the sale and purchase of rice. After reciting the terms of the contract and the circumstances surrounding its execution, the court said [276 S.W. 905]:

"These provisions clearly show an intention on the part of both parties to the contract that upon execution of the contract the title to the rice should pass from the seller to the buyer. Such intention of the parties is the criterion by which the passing of the title is to be determined. And, when the terms of the written contract, as in this case, show such intention with certainty, when applied to the existing matters to which they relate, such intention will control and be given effect.

"When * * * nothing appears in the contract inconsistent with the immediate passage of the title in the property to the buyer—the sale, as between the seller and the buyer, becomes executed upon the execution of the contract, and the title in the property passes to the buyer at that time." See also, Victor Safe & Lock Co. v. Texas State Trust Co., supra; Williston on Contracts (1920) Vol. 2, par. 730, p. 1391; (1924) Vol. 1, p. 811.

Young delivered complete and unconditional possession of the car to Alston immediately after Alston handed him the draft. Alston took the car from Abilene to Morton. Young knew at the time that Alston was a dealer in automobiles and that he might sell the car at any time after it was delivered to him. This is

a strong circumstance that Young had no intention of retaining a lien upon, or title to, the car and, when coupled with the other circumstances we have mentioned, we think is impells the conclusion that it was the intention of the parties to pass the title to the car at the time the contract for its sale and purchase was made between Young and Alston. The case of Deahl v. Thomas is not analogous to the question here involved because in that case it was understood and agreed that the title would not pass until the draft was paid.

█ Appellant next contends that, when appellees purchased the car from Alston, they had constructive notice of his lien and claim thereon and the court erred in refusing him a foreclosure of his lien and denying him any relief concerning it. He asserts that, although there was no notation of his lien on the manufacturer's certificate, the attaching of the certificate to the draft given by Alston to Young for the purchase price was equivalent to the noting of the transaction upon the certificate as required by Section 41 of Article 1436—1, V.R.P.C. Appellees could not be charged with notice of the chattel mortgage because it was not executed until three days after they purchased the automobile. Appellant contends, however, that the transaction established an equitable lien on the car in his favor because, at the time appellees purchased it, the manufacturer's certificate, which was the only evidence of title to it, was then attached to the draft and upon the draft was a notation "papers attached—1948 Chevrolet." In other words, he contends that this was sufficient to comply with the provisions of Section 41 of the Act which provides, in effect, that a lien upon an automobile which is the subject of a first sale shall be valid only when there is noted on the manufacturer's certificate the name, date and address of the mortgagees whose rights arise out of, or incident to, such first sale by reason of the execution of any written instrument by the transferee. We are unable to agree with appellant in this contention. No evidence of any claim, lien or interest of appellees was noted on the manufacturer's certificate and appellees had no actual knowledge of the existence of such a lien, interest, or claim. There is no evidence whatever that they knew Alston had given the draft to Young nor that the manufacturer's certificate was attached to it. They purchased the car in good faith and paid a valuable consideration for it. Section 41 of the Act makes void any lien on an automobile unless evidence of such lien has been noted on the manufacturer's certificate and the courts are not authorized to change the plain provision of the statute. In order to charge appellees with notice of any claim, lien or other interest of appellant to, upon, or in the automobile, it was necessary that such claim, lien or interest be noted upon the manufacturer's certificate, giving the date, name and address of the person claiming such lien or interest. This is the plain provision of the statute and, since no such notation was placed upon the manufacturer's certificate, appellees were not charged with notice of it. Motor Inv. Co. v. Knox City, supra. Furthermore, the draft was not paid by appellant. It was paid by the bank out of Alston's account which had been replenished by the money loaned to Alston by appellant upon the note and chattel mortgage on the car. These were executed by Alston three days after he had sold the car to appellees and they had paid him for it and received possession of it.

█ Appellant next contends that appellees relied solely upon the affirmative defense that they were innocent purchasers of the automobile; that they did not request nor obtain a finding of the jury on that issue; that they therefore waived and abandoned such affirmative defense; and the court erred in rendering judgment in their favor. The question of whether or not appellees were innocent purchasers was an issue in the case only as it related to the other questions we have discussed. The undisputed evidence showed that they were innocent purchasers and entitled to be protected as such unless they had constructive notice of appellant's claims or unless Alston failed to procure title to the automobile when he purchased

it from Young. We have held that appellees were not charged with notice of appellant's claim because it was not noted upon the manufacturer's certificate and that Alston did procure title to the car when he purchased it from Young. Those two issues having been disposed of adversely to appellant's contentions, and the law being against his contentions in respect to them, the case was left without controversy as to appellee's being innocent purchasers and, since there was no issue of fact involved, it was not necessary that the question of whether or not they were innocent purchasers be submitted to the jury. City of Austin v. Johnson, Tex. Civ.App., 195 S.W.2d 222.

We have carefully examined all of the assignments and points of error presented by appellant and, in our opinion, none of them reveals error. The judgment of the court below will, therefore, be affirmed.