CONTINENTAL CREDIT CORPORATION,
Appellant,

v.

Ruskin C. NORMAN et al., Appellees.

No. 13101.

Court of Civil Appeals of Texas.

San Antonio.

May 15, 1957.

Rehearing Denied June 12, 1957.

Russell S. Ponder, Moursund, Ball, Bergstrom & Barrow, San Antonio, for appellant.

Kampmann & Kampmann, Russell S. Ponder, T. P. Hull, San Antonio, for appellees.

POPE, Justice.

This is a double appeal. The first dispute concerns the conflicting claims between two purchasers of motor vehicles and Continental Credit Corporation, hereafter called Continental. The purchasers paid the dealer and received possession of the vehicles, but did not receive the manufacturer's certificates and did not register the vehicles. Subsequently the dealer, instead of delivering the manufacturer's certificates to the purchasers, borrowed money from Continental on the strength of the certificates, which showed that the described vehicles were free of liens. The trial court denied Continental's claim of a lien, and held that because the dealer was not the owner he could not mortgage the vehicles. Continental urges that the sale by the dealer to the two purchasers was void under the Certificate of Title Act, that the dealer retained ownership of the cars, and therefore could mortgage the vehicles.

Ernest A. Yanta was a Buick dealer in Cuero, Texas. On February 2, 1955, he delivered a car to Dr. Harold D. Buttery at a San Antonio warehouse. On February 4, 1955, he delivered another car to Dr.

Ruskin C. Norman. Both men paid the dealer and obtained possession of the vehicles. Each filled in an application for certificate of title and Yanta agreed to forward their applications to the tax collector. At that time neither of the purchasers obtained the manufacturer's certificate from Yanta. Yanta, the dealer, did not have the certificates at the time, and not until February 11th did he receive them from General Motors Corporation. Instead of making application for certificates of title, as he had promised his two purchasers he would do for them, Yanta on February 14th went to Continental with the two manufacturer's certificates. The certificates were clear of liens on their face, and Yanta obtained a loan of $2,614 on the security of the vehicle already delivered to Dr. Buttery, and a loan of $2,124.-71 on the security of the vehicle already delivered to Dr. Norman. Continental made no effort to determine the location or possession of the vehicles, but took a chattel mortgage on each vehicle, and on the back of the respective manufacturer's certificates wrote in the fact of the lien against each vehicle.

■ The Certificate of Title Act, Art. 1436–1, Vernon's Ann.Tex.Penal Code, distinguishes two kinds of vehicles, and the rules applicable to the two classes are entirely different. One kind of vehicle is classified as a "New Car," and that term is explained by Section 7. The other kind is called a "Used Car," and that term is explained in Section 8. A "Used Car" is one which has been the subject of a "subsequent sale," which is defined to mean the sale of a vehicle which has been registered or licensed anywhere. Sec. 8. Section 33 prohibits the sale of a vehicle at a subsequent sale unless the owner designated in the certificate of title transfers the certificate of title, which will show, among other things, whether there are any liens. The sales of the two vehicles in question were not evidenced by certificates of title, but a sale from a dealer to a purchaser of an unlicensed and unregistered vehicle is not a "subsequent sale" which must be made under Section 33. So long as a car is a "new car", that is, not a "used car," there may be repeated transfers without the need either to register the vehicle or apply for a certificate of title.

■ Continental reasons that the purported sales of the two vehicles without a transfer of the manufacturer's certificates, registration, and applications for certificates of title, rendered both sales void for all purposes. The point is not an open question; it has been settled by the Supreme Court against that contention. Motor Inv. Co. v. Konx City, 141 Tex. 530, 174 S.W.2d 482, 486. In that case a dealer sold a vehicle to Hedrick and delivered the manufacturer's certificate to him. Hedrick did not register the car nor apply for a certificate of title. Hedrick sold the car to Knox City, which paid the consideration, and he delivered possession. As in the instant case, he did not deliver the manufacturer's certificate to Knox City. Hedrick, as did Yanta in this case, then borrowed money on the strength of the manufacturer's certificate which he held, and the creditor noted the lien on the certificate. The Supreme Court held that the creditor's paper title did not prevail over the rights of Knox City, saying:

"The transfer of the vehicle from Hedrick to the City was not endorsed on the manufacturer's certificate, nor was the certificate delivered by Hedrick to the City at the time the City acquired the vehicle, but we find nothing in the Act which prescribes these steps as necessary prerequisites to the validity of such a sale. Sections 22 and 28 of the Act do require the presentment of of a manufacturer's certificate properly filled out, showing each previous transfer of the vehicle as a condition precedent to the right to receive a certificate of title from the State Highway Department, but there is no provision to the effect that a 'first sale' shall be invalid unless the manufacturer's cer-

tificate is transferred and delivered therewith. It is conceivable that one might buy such a vehicle from a dealer without any intention of ever putting it in operation upon a public highway, and so long as he did not so use it upon the public highway for purposes other than mere demonstration, there would be no necessity for the securing of a certificate of title, and therefore no necessity of presenting to the Highway Department the manufacturer's certificate properly filled out, as provided for in Section 22. The presentment of the manufacturer's certificate properly filled out is necessary only for the purpose of registering the car and the securing of a certificate of title. The transfer of the manufacturer's certificate is not essential to the validity of a first sale. We have examined the Act very carefully and have found no provision therein, and we have been cited to none, that would justify a holding that the transfer of the manufacturer's certificate is necessary to the validity of such a sale.

"It is true that Section 41 provides that no lien shall be valid on any motor vehicle unless there is noted on the manufacturer's certificate certain evidence of the existence of such a lien, and, by implication at least, such statute charges purchasers with notice of such a lien if it is so noted on the certificate. For this reason it is necessary for purchasers, in order to protect themselves against any outstanding liens shown on the certificate, to obtain such certificate before buying the vehicle; but the mere failure to obtain such a certificate on a first sale does not invalidate the sale, particularly where, as in this case, no evidence of any lien had been noted on the certificate at the time of the sale. * * *

"Since the sale from Hedrick to the City was a valid one, and it was accompanied by the delivery of the possession of the automobile, Hedrick, who had parted with both the title and possession of the vehicle, could not thereafter create a valid lien thereon in favor of Presley, even though Presley at the time he made his loan caused a notation thereof to be made on the duplicate or second manufacturer's certificate of title."

A sale to an "owner" as defined by Sec. 4, is still a first sale. Motor Inv. Co. v. Knox City, 141 Tex. 530, 174 S.W.2d 482, 484. A sale by an "owner" is a subsequent sale. A sale by an "owner" without making application for a certificate of title before the sale is governed by the Certificate of Title Act and is void. Secs. 27, 33. But a sale to an owner is governed by the rules governing ordinary sales of personal property. Nicewarner v. Alston, Tex.Civ.App., 228 S.W.2d 872, 874-875; Mills v. Clark, Tex.Civ.App., 257 S.W.2d 746, 750; Gerber v. Pike, Tex.Civ.App., 249 S.W.2d 90, 93; Jeter v. Radcliff Finance Corp., Tex.Civ.App., 247 S.W.2d 186; Mossler Acceptance Co. v. Johnson, D.C., 109 F.Supp. 157, 167-172.

When Yanta undertook to give a mortgage on the two vehicles more than a week after he sold and delivered possession to Doctors Buttery and Norman, under the rules governing ordinary sales of personal property, he did not own the vehicles and did not have the power to create the mortgages. Rhea Mortgage Co. v. Lemmerman, Tex.Com.App., 10 S.W.2d 690; Walker v. Security Loan Inv. Co., Tex.Civ.App., 259 S.W.2d 599; Wright Inv. Co. v. Powell, Tex.Civ.App., 27 S.W. 2d 321; 33 Am.Jur., Liens, § 9; 14 C.J.S. Chattel Mortgages § 23; 53 C.J.S. Liens § 7.

This part of the judgment we affirm.

### General Motors Corporation v. Continental Credit Corporation

Another phase of the trial below is before us on appeal. Continental Credit Corporation also sued General Motors Cor-

poration to enforce a mortgage upon another Buick automobile. Continental recovered judgment for the lien. The court's findings of fact reveal that Ernest A. Yanta was an authorized Buick dealer, but he was not the agent for General Motors Corporation. During the early part of February, 1955, General Motors shipped four Buicks to Evetts Warehouse in San Antonio. Under its manner of transacting business the warehouse was agent for General Motors, and Yanta could take no Buick from the warehouse until he paid for the vehicle, even though he possessed the certificate. General Motors did not send the manufacturer's certificates with the Buicks, but on February 11th General Motors Corporation mailed Yanta certificates covering all four vehicles. Each of the certificates certified that the respective vehicle described in the certificate had been transferred to Yanta Buick Company.

One of the certificates to Yanta included the Buick here in question and described it as a 1955 2-door Riviera with Motor No. V–8907836. General Motors in issuing that certificate in favor of Yanta did so unintentionally or by mistake. The certificate was placed in the possession of Yanta without his having paid for the vehicle. Yanta did not pay for, nor even contract to pay for the vehicle. On February 14th, he took the certificate to Continental, represented that he had paid for the vehicle described in the certificate and Continental loaned Yanta $2,754.77, and took his note and mortgage on the vehicle, which was then stored in Evetts Warehouse. The mortgage recited that Yanta had possession of the vehicle. Continental retained possession of the certificate and noted its lien on the certificate. General Motors later discovered its mistake in issuing and mailing the certificate to Yanta and immediately notified him to return the certificate, but he never did. Continental asserted that its lien was valid, and the trial court so held on principles of apparent authority and estoppel.

The trial court concluded that General Motors was negligent in issuing the manufacturer's certificate to Yanta through error, and further concluded that Continental was negligent in accepting a mortgage on the automobile without making an inspection of it, and in relying solely on the manufacturer's certificate. The court then concluded that "as between the two innocent parties, the one bringing about the occasion through which loss of money resulted should bear the loss; that the General Motors Corporation made it possible for defendant Yanta to secure the loan based upon the apparent ownership of the 'General Motors' automobile in Yanta, and therefore it should suffer the loss sustained by Continental Credit Corporation."

■ General Motors was the owner of this vehicle and never sold it. If it lost title, it was by force of an estoppel based upon the court's findings of mutual negligence of General Motors and the creditor. An owner of chattels may lose title by force of an estoppel which protects an innocent third person. Parma v. First Nat. Bank of Cameron, Tex.Com.App., 63 S.W. 2d 692; Seigal v. Warrick, Tex.Civ.App., 214 S.W.2d 883; Sackenreuther v. Winston, Tex.Civ.App., 137 S.W.2d 93. The rule has been applied to several situations.

■ An owner who arms another with both documentary evidence of title and actual possession of the chattel has been estopped with respect to innocent third persons. McKinney v. Croan, 144 Tex. 9, 188 S.W.2d 144; Nicewarner v. Alston, Tex.Civ.App., 228 S.W.2d 872; Southwestern Inv. Co. v. Erwin, Tex.Civ.App., 213 S.W.2d 81; Lang v. Harwood, Tex. Civ.App., 145 S.W.2d 945; Gossett v. Williams, Tex.Civ.App., 288 S.W. 594. See also, Mills v. Clark, Tex.Civ.App., 257 S.W.2d 746, 749; Chambers v. Consolidated Garage Co., Tex.Civ.App., 210 S.W. 565.

■ An owner who arms another with certain documents of title is likewise estop-

ped. Crockett v. Rogers, Tex.Civ.App., 137 S.W.2d 185. This is true of delivery of stock certificates with a power of disposition, Gillette v. Houston Nat. Bank, Tex. Civ.App., 139 S.W.2d 646; Sackenreuther v. Winston, Tex.Civ.App., 137 S.W.2d 93; or warehouse receipts, Parma v. First Nat. Bank of Cameron, Tex.Com.App., 63 S.W. 2d 692; 21 C.J. Estoppel § 181; 31 C.J.S. Estoppel § 106.

■ Possession, without anything more, is usually considered insufficient indicium of title to work an estoppel. There are many bailments of property which would not raise an assumption of ownership against the true owner. Seigal v. Warrick, Tex.Civ.App., 214 S.W.2d 883, 884; Trinity Finance Corporation v. Price, Tex.Civ. App., 192 S.W.2d 464; 31 C.J.S. Estoppel § 106 b.

■ In this case, Yanta held the manufacturer's certificate to the motor vehicle, but he did not and never did have possession of the vehicle. Possession was held by the true owner. The question is, therefore, whether the true owner, holding actual possession, is estopped by negligently arming Yanta with the manufacturer's certificate. When Continental took its mortgage and advanced its funds, the vehicle was in the actual possession of Evetts Warehouse in San Antonio, the agent of General Motors. Yanta's place of business was in Cuero. The vehicle was never on the floor of his place of business. The trial court concluded that Continental was negligent in lending money without any inspection or investigation and the record supports that conclusion. Continental made three other loans on vehicles at the time it made the loan on the vehicle here involved. An investigation would have revealed that none of those vehicles were in Evetts Warehouse. Had Continental sought to inspect the mortgaged property, it would have found that none of the four vehicles were in Yanta's possession.

■ The trial court concluded that both General Motors, the owner; and Continental, the mortgagee, were negligent. That conclusion defeats Continental's recovery. "In no event can an estoppel arise in favor of one who has been guilty of contributory negligence." 31 C.J.S. Estoppel §§ 102, 104; City of Tyler v. Bruck, Tex.Civ.App., 267 S.W.2d 429; Holland v. Blanchard, Tex. Civ.App., 262 S.W. 97, 102; Sheffield Car Co. v. Constantine Hydraulic Co., 171 Mich. 423, 137 N.W. 305; accord, Gose v. Brooks, Tex.Civ.App., 229 S.W. 979, 983.

■ Continued possession in the true owner, by the court's finding, put Continental on notice. Williston in his work on Sales, at Section 316, discusses this question and summarizes the cases by stating: "It should be noticed that it is not simply the indicia of title in these cases which is important, but possession coupled with the indicia of title." The annotation in 18 A.L.R.2d 816, 818, states: "It should be emphasized that in the great majority of the cases in which the issue of estoppel has been raised the 'innocent purchaser' has relied upon possession of the title documents in addition to possession of the vehicle itself, and that generally possession of such documents alone is insufficient indicia of ownership to justify reliance." While title may pass without change of possession, possession is the strongest indicia of ownership of personal property. Gay v. Hardeman, 31 Tex. 245, 251; Cities Service Oil Co. v. Heffington, Tex.Civ.App., 108 S.W.2d 334; 77 C.J.S. Sales §§ 295(b), (f); 55 C.J. Sales § 654.

■ The Supreme Court in Flack v. First Nat. Bank of Dalhart, 148 Tex. 495, 226 S.W.2d 628, 632, fully discusses notice to a lender which will defeat his priority. The case holds that a person is presumed to have knowledge of those things which might have been discovered by the diligent use of what information he has, and of the means in his power, which he ought to know. The court's finding in the present suit forecloses this matter of notice by its finding that Contintental was negligent. In other words, Continental did not

make that inquiry of which it had ample notice and is therefore negligent and its priority should be denied. As it was expressed in the Flack case: "Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge." And it was stated in San Antonio & A. P. Ry. Co. v. Sehorn, Tex.Civ.App., 127 S.W. 246, 247: "Means of knowledge, with the duty of using them, are deemed equivalent to knowledge itself, and passive good faith will not serve to excuse willful ignorance." Nash Miami Motors v. Bandel, 160 Fla. 925, 37 So.2d 366. On these principles and the finding of negligence on the part of Continental, it was a negligent mortgagee charged with notice by the actual possession of the owner, which would have produced knowledge of General Motors' ownership. Thurmond v. International Harvester Co., Tex.Civ. App., 166 S.W.2d 742; General Motors Acceptance Corporation v. Fowler, Tex.Civ. App., 36 S.W.2d 589; First National Bank of Portales, New Mexico v. McElroy, 51 Tex.Civ.App. 284, 112 S.W. 801; 77 C.J.S. Sales §§ 289f(2), 299a; accord, Hodges v. Leach, Tex.Civ.App., 214 S.W.2d 837, 841.

 Were these principles changed by the Certificate of Title Act, so that a manufacturer's certificate may suffice as the sole evidence of title? Here again, we must understand that rules applicable to a "new car" are unlike those applicable to a "used car." We here are concerned with a "new car." Mossler Acceptance Co. v. Johnson, D.C., 109 F.Supp. 157, 167–172, among other matters, concerned the prior rights of a mortgagee on security of a "new car." The court rejected the idea that the Certificate of Title Act gave controlling effect to paper indicia of title regardless of notice of prior claims. The court pointed out that it concerned an unregistered or "new car." It reviewed the Texas cases, including Nicewarner v. Alston, Tex.Civ.App., 228 S.W. 2d 872, 875, which states: "Such being the case, the sale by Alston to the appellees was not governed by the strict provisions of

the statute above mentioned but, rather, by the rules governing ordinary sales of personal property." The case turned upon the issue of notice, instead of a rule that would make the paper title controlling. Motor Investment Co. v. Knox City, 141 Tex. 530, 174 S.W.2d 482; 5 Southw.L.J. 423, 437–444; Mallory Motor Co. v. Overall, Mo., 279 S.W.2d 532.

The rule is otherwise with respect to a "used car." Guinn v. Lokey, 151 Tex. 260, 249 S.W.2d 185, 189.

The judgment is reversed and rendered that Continental take nothing. The costs of this appeal are adjudged against Continental.