MOTOR INVESTMENT COMPANY ET AL V. CITY OF KNOX CITY.

No. 8117. Decided October 6, 1943.
Rehearing overruled November 3, 1943.
(174 S. W., 2d Series, 482.)

*Strasburger, Price, Holland, Kelton & Miller* and *W. W. Strasburger*, all of Dallas, for petitioner.

The court erred in holding that an assignment from a dealer of a manufacturer's certificate prior to the time the new vehicle is used or operated on the public highways, conveys no title to the vehicle to the assignee without registering or licensing it,

and that therefore the assignee cannot create a valid lien against it. Penal Code Art. 1436-41; Bean v. Reeves, 77 S. W. (2d) 737; Montgomery v. State, 143 S. W. (2d) 945.

*M. F. Billingsley,* of Munday, and *Shook & Shook,* of Dallas, for respondent.

In answer to above proposition. Richmond v. Hog Creek Oil Co. 239 S. W. 904; Tarpley v. Epperson, 125 Texas, 63, 79 S. W. (2d) 1081; Service Finance Corp. v. Grote, 133 Texas 606, 131 S. W. (2d) 93.

*Wm. Kay Miller,* of Dallas, for Texas Automotive Dealers Association, and *Irion & Cain,* of Dallas, for Texas Association of Automobile Finance Companies, filed briefs as amici curiae.

MR. JUSTICE ALEXANDER delivered the opinion of the Court.

This suit is between the alleged purchaser of an automobile and one claiming a lien thereon, and involves a construction of the automobile "Certificate of Title Act" (Article 1436-1, Vernon's Penal Code, Acts 46th Leg., 1939, p. 602.)

Ford Motor Company manufactured an automobile and sold it in due course to Boling-Duggan, a partnership, a dealer in Dallas, and delivered and manufacturer's certificate along with the automobile. On March 7, 1940, Boling-Duggan sold the vehicle to R. M. Hedrick, taking a chattel mortgage lien for $770.00 of the sale price. Boling-Duggan delivered the manufacturer's certificate to its vendee Hedrick at the time of the sale, but did not note thereon the above lien. Hedrick purchased the automobile for the purpose of converting it into a fire truck and reselling it to a consumer. After having so converted it, Hedrick, on the 30th day of April, 1940, for a valuable consideration sold and delivered the automobile to the City of Knox City. At that time said automobile had not been previously registered with nor licensed by the State Highway Department of the State of Texas. Hedrick exhibited the manufacturer's certificate to the City, but apparently never delivered it. What became of it is not shown by the record. Thereafter Hedrick represented to Boling-Duggan that he had lost the original manufacturer's certificate, and through the latter company secured from Ford Motor Company a duplicate or second manufacturer's certificate, which was exactly like the original. On July 17, 1940, Hedrick applied to J. Earl Presley for a loan to take up the balance due on the debt of $770.00 previously held by Boling-Duggan, which was then held by Interstate Securities Company. In order to secure the loan he assigned to Presley the

second or duplicate manufacturer's certificate, and executed to him a note for $759.00, secured by a mortgage on the automobile. Presley made the loan, noting his lien on the margin of the second or duplicate manufacturer's certificate, and out of the funds so loaned paid off the prior debt held by Interstate Securities Company. Presley in due course assigned the note and lien to Motor Investment Company. Motor Investment Company brought this suit for debt and to foreclose its lien, joining Knox City as one of the defendants.

The trial court rendered judgment in favor of Motor Investment Company against J. Earl Presley, as endorser of the note, with foreclosure of the lien on the automobile as against all parties, including the City of Knox City. The Court of Civil Appeals in a majority opinion affirmed the judgment for debt against Presley, but denied the right of foreclosure of the lien on the automobile as against the City of Knox City. 169 S. W. (2d) 245.

Boling-Dugan undoubtedly had good title to the automobile at the time it purported to sell it to Hedrick. The sale to Hedrick was for a valuable consideration and possession was delivered to him. At common law such a sale was valid, and it must here be held to be good unless there was then some statutory provision to the contrary. The majority of the Court of Civil Appeals held that the sale to Hedrick was invalid because the automobile had not theretofore been registered with and a certificate of title obtained from the Highway Department under the above-mentioned Certificate of Title Act.

The Certificate of Title Act (Article 1436-1, Vernon's Penal Code) was enacted by the Legislature of this State in 1939 to lessen and prevent the theft of motor vehicles, and the importation into this State of and traffic in stolen motor vehicles, and the sale of encumbered motor vehicles without disclosure of existing liens. The pertinent provisions of the Act are as follows:

"Sec. 4. The term 'Owner' includes any person, firm, association, or corporation other than a manufacturer, importer, distributor, or dealer claiming title to, or having a right to operate pursuant to a lien on a motor vehicle after the first sale as herein defined, except the Federal Government and any of its agencies, and the State of Texas and any governmental subdivision or agency thereof not required by law to register or license motor vehicles owned or used thereby in this State."

"Sec. 7. The term 'First Sale' means the bargain, sale, transfer, or delivery within this State with intent to pass an interest therein, other than a lien of a motor vehicle which has not been previously registered or licensed in this State."

"Sec. 8. The term 'Subsequent Sale' means the bargain, sale, transfer, or delivery within this State, with intent to pass an interest therein, other than a lien of a motor vehicle which has been registered or licensed within this State or when it has not been required under law to be registered or licensed in this State."

"Sec. 9. The term 'New Car' means a motor vehicle which has never been the subject of a first sale."

"Sec. 16. The term 'Manufacturer' means any person regularly engaged in the business of manufacturing or assembling new motor vehicles, either within or without this State."

"Sec. 19. The term 'Dealer' means any person purchasing motor vehicles for resale at retail to owners."

"Sec. 22. The term 'Manufacturer's Certificate' means a certificate on form to be prescribed by the Department showing original transfer of a new motor vehicle from the manufacturer to the original purchaser, whether importer, distributor, dealer, or owner, and when presented with an application for certificate of title must show thereon, on appropriate forms to be prescribed by the Department, each subsequent transfer between distributor and dealer, dealer and dealer, and dealer to owner."

"Sec. 24. The term 'Certificate of Title' means a written instrument which may be issued solely by and under the authority of the Department, and which must give the following data together wtih such other data as the Department may require from time to time:

"(a) The name and address of the purchaser and seller at first sale or transferee and transferrer at any subsequent sale. (b) The make. (c) The body type. (d) The motor number. (e) The serial number. (f) The number of the license plates currently assigned thereto and the State of issuance, whether in this or any other State. (g) The names and addresses and dates of any liens on the motor vehicle, in chronological order of recordation. (h) If no liens are registered on the motor vehicle, a statement of such fact. (i) A space for the signature of the owner and the owner shall write his name with pen and ink in such space upon receipt of the certificate."

"Sec. 27. Before selling or disposing of any motor vehicle required to be registered or licensed in this State on any highway

or public place within this State, except with dealer's metal or cardboard license number thereon attached as now provided by law, the owner shall make application to the designated agent in the county of his domicile upon form to be prescribed by the Department for a certificate of title for such motor vehicle.

"Sec. 28. No designated agent shall issue a receipt for an application for certificate of title to any new motor vehicle the subject matter of the first sale unless the applicant shall deliver to such agent a manufacturer's certificate properly assigned by the manufacturer, distributor, or dealer shown thereon to be the last transferee to the applicant, upon form to be prescribed by the Department."

"Sec. 33. No motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the Department before a Notary Public, which form shall include, among such other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title and no title to any motor vehicle shall pass or vest until such transfer be so executed."

"Sec. 41. No lien shall be valid on any motor vehicle which is hereafter the subject of a first sale, or be enforceable against any such motor vehicle unless there is noted on the importer's or manufacturer's certificate the date, name, and address of the mortgagees whose rights arise out of or are incident to such first sale by reason of the execution of any written instrument by the transferee."

"Sec. 51. It shall hereafter be unlawful for any person, either by himself or through any agent, to offer for sale or to sell or to offer as security for any obligation any motor vehicle registered or licensed in this State without then and there having in his possession the proper receipt or certificate of title covering the motor vehicle so offered.

"Sec. 52. It shall hereafter be unlawful to buy or acquire any title other than a lien in a motor vehicle registered or licensed in this State without then and there demanding of the proposed seller the registration receipt and certificate of title covering the particular motor vehicle which shall, upon consummation of the

purchase, be transferred upon such form as may be provided by the Department."

"Sec. 53. All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with."

"Sec. 60. The provisions of this Act shall not apply to motor vehicles not required to be registered or licensed under the laws of this State then effective, nor to motor vehicles owned or operated by the Federal Government or any of its agencies, the State of Texas, or any municipal government unless such motor vehicle is sold to a person required under this Act to procure a certificate of title, in which event the provisions hereof shall be fully operative as to such motor vehicle."

■ Section 27 of the Act is the section which requires the procurement of a certificate of title as a condition precedent to the right to transfer a motor vehicle. By the terms of that section such certificate of title is required for motor vehicles "required to be registered or licensed in this State on any highway or public place within this State." It specificially excepts motor vehicles "with dealer's metal or carboard license number thereto attached as now provided by law, * *." The Act does not designate what vehicles are required to be registered or licensed in this State, nor under what circumstances dealers may attach metal or cardboard license numbers to their cars, but Revised Statutes, Article 6675a (Acts 1929, 41st Leg., 2nd C. S., p. 172, ch. 88, sec. 1; Acts 1930, 41st Leg., 5th C. S., p. 151, ch. 23, sec. 1) and 6686 seem to supply this information. Article 6675a-2 requires that all motor-driven vehicles, used or to be used upon the public highways, except farm tractors and other implements of husbandry, be registered with the State Highway Department before they are operated upon the public highways. Article 6686 allows manufacturers and dealers to demonstrate their motor vehicles upon the highways with a dealer's metal plate or carboard number attached thereto, without the necessity of a separate registration of each vehicle. In view of the fact that Section 27 excepts from its provisions motor vehicles that are permitted by law to be operated with dealer's metal or cardboard license number attached thereto, and the further fact that Article 6686 specifically permits manufacturers and dealers to demonstrate their vehicles upon the public highways with such a dealer's metal or cardboard license number attached thereto, and exempts such manufacturers and dealers from the necessity of separately registering such vehicles, we are of the opinion that manufacturers and dealers

who use their vehicles only for the purposes so permitted are not required to secure a certificate of title from the State Highway Department as a condition precedent to the right to transfer such a vehicle.

■■ Moreover, under said Section 27, it is only an "owner" of a motor vehicle that is required to register such vehicle and secure a certificate of title therefor before selling the same. The term "owner," as defined in Section 4, excludes manufacturers and dealers, and includes only those claiming title *"after the first sale."* The Act divides sales of automobiles into two classes, namely "first sale" and "subsequent sale." The term "first sale" means a transfer of a vehicle which has not previously been registered (Sec. 7), as distinguished from a "subsequent sale," meaning a transfer after a vehicle has been registered or should, in law, have been registered (Sec. 8). Reading the Act as a whole, we think it clear that every transfer of a motor vehicle, regardless of the number thereof, from manufacturer to dealer, dealer to dealer, and from dealer to "owner," as defined in the Act, constitutes a "first sale," and that it is not necessary that the vehicle be registered and a certificate of title thereto obtained as a condition precedent to the validity of such "first sale."

■ Boling-Duggan was a dealer as defined in Section 19 of the Act and not an "owner" who was claiming title to the vehicle "after a first sale," and it was therefore not required under either Section 27 or Section 33 to secure a certificate of title before selling the automobile to Hedrick. We therefore hold that Hedrick acquired good title to the vehicle from Boling-Duggan, subject, of course, to any valid lien retained by the seller.

For the same reason we hold that the City acquired good title from Hedrick, even though Hedrick had not registered the automobile with the State Highway Department and secured a certificate of title prior to the sale. Hedrick was either a "manufacturer" as defined in Section 16 or a "dealer" as defined in Section 19 of the Act, and not an "owner" as defined in either Section 4 thereof. Consequently he was not required by either Section 27 or 33 to secure a certificate of title prior to the sale to the City.

■ The transfer of the vehicle from Hedrick to the City was not endorsed on the manufacturer's certificate, nor was the certificate delivered by Hedrick to the City at the time the City acquired the vehicle, but we find nothing in the Act which pre-scribes these steps as necessary prerequisites to the validity of

such a sale. Sections 22 and 28 of the Act do require the presentment of a manufacturer's certificate properly filled out, showing each previous transfer of the vehicle as a condition precedent to *the right to receive a certificate of title* from the State Highway Department, but there is no provision to the effect that a "first sale" shall be invalid unless the manufacturer's certificate is transferred and delivered therewith. It is conceivable that one might buy such a vehicle from a dealer without any intention of ever putting it in operation upon a public highway, and so long as he did not so use it upon the public highway for purposes other than mere demonstration, there would be no necessity for the securing of a certificate of title, and therefore no necessity of presenting to the Highway Department the manufacturer's certificate properly filled out, as provided for in Section 22. The presentment of the manufacturer's certificate properly filled out is necessary only for the purpose of registering the car and the securing of a certificate of title. The transfer of the manufacture's certificate is not essential to the validity of a first sale. We have examined the Act very carefully and have found no provision therein, and we have been cited to none, that would justify a holding that the transfer of the manufacturer's certificate is necessary to the validity of such a sale.

It is true that Section 41 provides that no lien shall be valid on any motor vehicle unless there is noted on the manufacturer's certificate certain evidence of the existence of such a lien, and, by implication at least, such statute charges purchasers with notice of such a lien if it is so noted on the certificate. For this reason it is necessary for purchasers, in order to protect themselves against any outstanding liens shown on the certificate, to obtain such certificate before buying the vehicle; but the mere failure to obtain such a certificate on a first sale does not invalidate the sale, particularly where, as in this case, no evidence of any lien had been noted on the certificate at the time of the sale.

■ The chattel mortgage evidencing the lien retained by Boling-Duggan in its sale to Hedrick on March 7th was duly registered as required by Revised Statutes, Article 5490, but no evidence of such lien was noted on the manufacturer's certificate, as provided in Section 41 of the Certificate of Title Act, and the City had no actual knowledge of the existence of such lien at the time it bought the car. It appears to have purchased the vehicle in good faith for value and without notice, except for the constructive notice, if any, created by the registration of the

chattel mortgage. In view of the specific provisions of Section 41 to the effect that all liens against such vehicles are void unless evidence thereof has been noted on the manufacturer's certificate, and the undisputed evidence that no such lien had been noted on the manufacturer's certificate prior to the purchase of the car by the City, the City was not charged with notice of the prior lien.

The lien given by Hedrick to Presley, and later assigned to Motor Investment Company, was not in existence at the time Hedrick sold and delivered the vehicle to the City. Since the sale from Hedrick to the City was a valid one, and it was accompanied by the delivery of the possession of the automobile, Hedrick, who had parted with both the title and possession of the vehicle, could not thereafter create a valid lien thereon in favor of Presley, even though Presley at the time he made his loan caused a notation thereof to be made on the duplicate or second manufacturer's certificate of title.

From the above it will be seen that while we do not approve the holding of the majority of the Court of Civil Appeals on some of the law points discussed in the opinion, we do approve its judgment in denying the alleged lienholder a foreclosure of its lien as against the City. The judgment of the Court of Civil Appeals is therefore affirmed.

Opinion delivered October 6, 1943.

Rehearing overruled November 3, 1943.