

# THE ATTORNEY GENERAL
## OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN 11, TEXAS

June 16, 1947

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas       Opinion No. V-253

                Re: The applicability of
                     the 1% sales tax to
                     a sale by a new car
                     dealer to a used car
                     dealer.

Dear Mr. Sheppard:

      You have requested the opinion of this Department based upon the following fact situation:

      "A manufacturer of motor vehicles sells a motor vehicle to an <u>authorized new car dealer</u>. After the sale is made the authorized new car dealer sells the car to a <u>used car dealer</u>, operating in some other part of the State of Texas, and the used car dealer resells this car to an individual who is required to pay a 1% sales tax."

      Your first question is:

      "Will it be necessary for this used car dealer to register the car and pay a 1% sales tax before offering the car for sale or does this used car dealer have the same right to sell a new unregistered car as a first sale, even though he does not hold a contract with any manufacturer to sell new cars?"

      The pertinent parts of Chapter 184, Article VI, Acts of the 47th Legislature, 1941 (codified as Article 7047k, Vernon's Civil Statutes) follows:

      "Sec. 1. (a) There is hereby levied a tax upon every retail sale of every motor vehicle sold in this State, such tax to be equal to one (1) per cent of

Hon. Geo. H. Sheppard, Page 2   (V-253)

the total consideration paid or to be
paid to the seller by the buyer, which
consideration shall include the amount
paid or to be paid for said motor ve-
hicle and all accessories attached
thereto at the time of the sale, whether
such consideration be in the nature of
cash, credit, or exchange of other pro-
perty, or a combination of these.

"  . . .

"Sec. 3 (a) The term 'sale or
'sales' as herein used shall include in-
stallment and credit sales, and the ex-
change of property, as well as the sale
thereof for money, every closed transaction
constituting a sale. The transaction whereby
the possession of property is transferred
but the seller retains title as security
for the payment of the price shall be deem-
ed a sale.

"(b) The term 'retail sale' or 're-
tail sales' as herein used shall include
all sales of motor vehicles except those
whereby the purchaser acquires a motor ve-
hicle for the exclusive purpose of resale
and not for use.

" . . .

"Sec. 5. The taxes levied in this
Article shall be collected by the Assessor
and Collector of taxes of the county in
which any such motor vehicle is first reg-
istered or first transferred after such a
sale; the Tax Collector shall refuse to ac-
cept for registration or for transfer any
motor vehicle until the tax thereon is paid.
. . ."

It will be noted that Section 5 supra, re-
quires the 1% sales tax to be collected by the Tax
Collector of the County in which the motor vehicle is
first registered or first transferred after such sale.
Therefore the statutes which govern the registration
of the motor vehicle must be considered in pari materia
with the statute imposing the sales tax.

The "Certificate of Title Act", codified as Article 1436-1, Vernon's Penal Code, (Acts 46th Legislature, 1939, p. 602) has been construed by the Supreme Court of Texas in the case of Motor Investment Co. v. Knox City, 174 S.W. (2d) 482, which involved a fact situation somewhat similar to the one above stated.

The pertinent parts of the Court's opinion are here quoted:

"Ford Motor Company manufactured an automobile and sold it in due course to Boling-Duggan, a partnership, a dealer in Dallas, and delivered the manufacturer's certificate along with the automobile. On March 7, 1940, Boling-Duggan sold the vehicle to R. M. Hedrick, taking a chattel mortgage lien for $770 of the sale price. Boling-Duggan delivered the manufacturer's certificate to its vendee Hedrick at the time of the sale, but did not note thereon the above lien. Hedrick purchased the automobile for the purpose of converting it into a fire truck and reselling it to a consumer. After having so converted it, Hedrick, on the 30th day of April, 1940, for a valuable consideration sold and delivered the automobile to the City of Knox City. At that time said automobile had not been previously registered with nor licensed by the State Highway Department of the State of Texas. . . .

"The Certificate of Title Act, Article 1436-1, Vernon's Penal Code, was enacted by the Legislature of this State in 1939 to lessen and prevent the theft of motor vehicles, and the importation into this State of and traffic in stolen motor vehicles, and the sale of encumbered motor vehicles without disclosure of existing liens. The pertinent provisions of the Act are as follows:

"'Sec. 4. The term 'Owner' includes any person, firm, association, or corporation other than manufacturer, importer, distributor, or dealer claiming title to, or having a right to operate pursuant to a lien on a motor vehicle after the first sale as herein defined, . . .

"'Sec. 7.  The term 'First Sale'
means the bargain, sale, transfer or
delivery within this State with intent
to pass an interest therein, other than
a lien of a motor vehicle which has not
been previously registered or licensed
in this State.

"'   . . .

"'Sec. 9.  The term 'New Car' means
a motor vehicle which has never been the
subject of a first sale.

"'   . . .

"'Sec. 19.  The term 'Dealer' means
any person purchasing motor vehicles for
resale at retail to owners.

"'   . . .

"'Sec. 27.  Before selling or dispos-
ing of any motor vehicle required to be
registered or licensed in this State on any
highway or public place within this State,
except with dealer's metal or cardboard li-
cense number thereto attached as now provid-
ed by law, the owner shall make application
to the designated agent in the county of his
domicile upon form to be prescribed by the
Department for a certificate of title for
such motor vehicle.

"'   . . .'

"Section 27 of the Act is the section
which requires the procurement of a certif-
icate of title as a condition precedent to
the right to transfer a motor vehicle.  By
the terms of that section <u>such certificate
of title is required for motor vehicles 're-
quired to be registered or licensed in this
State</u>, on any highway or public place within
this State'. . . .

"   . . .

Hon. Geo. H. Sheppard, Page 5  (V-253)

"Moreover, under said Section 27,
it is only an 'owner' of a motor vehicle
that is required to register such vehicle
and secure a certificate of title therefor
before selling the same. The term 'owner,'
as defined in Section 4, excludes manufac-
tures and dealers, and includes only those
claiming title 'after the first sale.' The
Act divides sales of Automobiles into two
classes, namely 'first sale' and 'subsequent
sale.' The term 'first sale' means a trans-
fer of a vehicle which has not previously
been registered (Sec. 7), as distinguished
from a 'subsequent sale,' meaning a transfer
after a vehicle has been registered or should,
in law, have been registered (Sec. 8). Read-
ing the Act as a whole, we think it clear
that every transfer of a motor vehicle, re-
gardless of the number thereof, from manufac-
turer to dealer, dealer to dealer, and from
dealer to 'owner,' as defined in the Act,
constitutes a 'first sale,' and that it is
not necessary that the vehicle be registered
and a certificate of title thereto obtained
as a condition precedent to the validity of
such 'first sale.'"  (Emphasis added)

"... "

In view of the foregoing construction of the
law it is not necessary for the used car dealer to reg-
ister the new car and since the motor vehicle was ac-
quired by him for the "exclusive purpose of resale", it
is exempt from the motor vehicle retail sales tax under
the provisions of Section 3 (b), Article 7047k, supra.

Your second question is:

"Would it make any difference if the car
bought by the used car dealer from the original
authorized new car dealer was a secondhand car?"

It is presumed that the secondhand motor vehicle
is a "Used Car" as defined by Section 10, Article 1436-1,
Vernon's Penal Code, as follows:

"The term 'Used Car' means a motor ve-
hicle that has been the subject of a first

sale whether within this State or else-
where."

This sale constitutes a "Subsequent Sale as
defined in Section 8, Article 1436-1, Vernon's Penal
Code, as follows:

"The term 'Subsequent Sale' means
the bargain, sale, transfer, or delivery
within this State, with intent to pass
an interest therein, other than a lien
of a motor vehicle which has been register-
ed or licensed within this State or when
it has not been required under law to be
registered or licensed in this State."

Nevertheless, the "Used Car" being acquired
by the used car dealer for the "exclusive purpose of
resale", the transaction is exempt from the payment of
the 1% quoted retail sales tax under the provisions of
Section 3 (b) of Article 7047k, supra.

## SUMMARY

A new motor vehicle acquired from the
manufacturer by a car dealer, who in turn
sells the vehicle to a used car dealer, need
not be registered under the provisions of
the "Certificate of Title Act", Article 1436-1,
Vernon's Penal Code, and is not subject to the
1% motor vehicle retail sales tax, (Article
7047k, Vernon's Civil Statutes) when acquired
by the used car dealer for the "exclusive pur-
pose of resale". Motor Investment Co. v. Knox
City, 141 Tex. 530, 174 S.W. (2d) 482. A
"Used" car sold by a "New Car" dealer to a
"Used Car" dealer who acquires it for the "ex-
clusive purpose of resale", is exempt from the
1% retail motor vehicle retail sales tax. Art-
icle 7047k, Sec. 3 (b).

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By

C. K. Richards
Assistant

APPROVED:

ATTORNEY GENERAL

CKR/lh:jrb