### GERBER et al. v. PIKE et al.
### No. 6624.

Court of Civil Appeals of Texas. Texarkana.
May 8, 1952.

------

Dudley Davis, Center, Ross K. Prescott, Dallas, for appellants.

Sid B. Turner, Tom Bankhead, Carthage, for appellees.

REUBEN A. HALL, Chief Justice.

This is a suit to try title and for possession of four trucks, and in the alternative for damages in the sum of $6,200, their alleged value. Appellees alleged in their answer that they acquired title and possession of the four trucks under a bill of sale and invoice in full compliance with the Certificate of Title Act of the State of Texas, and secured from the Department of Public Safety of this State certificates of title evidencing full ownership of said trucks in them. Appellees alleged further, "that the plaintiffs were guilty of such neglect and carelessness in the transaction with A. O. Shepherd in transferring possession of the trucks without receiving purchase price, or in determining the solvency of A. O. Shepherd, or using other means to protect their interest, so as to estop them from asserting any right, title or interest in said trucks as against these defendants, who are innocent purchasers for value, and were without means or position to protect themselves against the fraudulent acts of A. O. Shepherd." Trial was to the court without a jury and resulted in judgment that appellants take nothing by their suit.

Appellants present thirty-five points which they discuss in three groups. The first group embodies points one to twelve, inclusive, and concerns the issue of whether there was a sale of the four trucks by appellants to Shepherd Motor Company at the time Shepherd Motor Company delivered its four checks to appellants and received possession of the trucks in Chicago, Illinois.

The facts show that Shepherd Motor Company of Arkadelphia, Arkansas, was a dealer in "new" and "used" cars, and on or about July 17, 1950, purchased and received possession of four Chevrolet 2-ton trucks, consisting of cabs and chassis, from appellants, doing business as Broadway Car Company in Chicago, Illinois. At the time of the purchase and delivery of trucks Shepherd gave to appellants four checks, each for the sum of $1550.00, drawn on a bank in Arkadelphia, Arkansas. These checks were on July 18, 1950, deposited in the Belmont National Bank of Chicago by appellants for collection. They were later returned to the Chicago bank unpaid account insufficient funds. Appellants' testimony is to the effect that each of the checks given by Shepherd in payment for the trucks had attached to it an Illinois Certificate of Title, and that the sale of the trucks to Shepherd was conditioned upon the payment of the checks by the Arkadelphia bank. Appellants contend further that Broadway Car Company was a dealer in "used" cars only; that the trucks in question were purchased by it from Ritz Television Company and for that reason it had secured Illinois Certificates of Title covering each of them, which, as stated above, were attached to the Shepherd checks given in payment for the four trucks. The circumstances offered in evidence by appellees indicate that no such certificates were attached to the checks and that the sale was consummated and possession delivered in Chicago, at the time the checks were turned over to appellants and Shepherd received the four trucks. Immediately upon delivery of the trucks Shepherd moved them to Arkadelphia, Arkansas.

■ The issue of whether the trucks were "used" or "new" when purchased by Shepherd was a sharply contested issue, as was the question of whether a sale of the trucks was consummated in Chicago when delivery was made to Shepherd. The trial court found that appellants acquired the four trucks "consisting only of cab and chassis, for the purpose of re-sale and not

for use in their business or for pleasure." The trial court found also that the trucks were "new" and "unused." From the trial court's findings of fact, which we hold are supported by the evidence, it concluded that "the sale by plaintiffs (appellants) to A. O. Shepherd—Shepherd Motor Company—passed title to the motor vehicles," and that "at the time the motor vehicles were transferred to defendant (appellee) Elbert Pike they had never been in a 'bona fide consumer use.'" In such situation the trucks at the time of their purchase by Shepherd Motor Company did not require certificates of title under either the Illinois, S.H.A. ch. 95½, § 74 et seq. or Texas, Vernon's Ann.P.C. art. 1436–1 et seq., Certificate of Title Acts. Motor Investment Co. v. Knox City, 141 Tex. 530, 174 S.W.2d 482; Nicewarner v. Alston, Tex.Civ.App., 228 S.W.2d 872, writ refused, n. r. e.

 Whether the title passed in Chicago depends upon the intention of the parties at the time. This presented a fact issue which was resolved by the trial court in favor of appellees. In our opinion the trial court's holding in this respect, is amply supported by the record. Appellants have cited several cases which are ruled by the particular facts in those cases. A careful reading of those cases will show that each depended upon a fact situation which as found by the trier of the facts support the opinion of the court that title did not pass with possession.

██ Points numbers 13 to 25, inclusive, are discussed by appellants under one group and these points have to do with the contention of appellees that they were innocent purchasers for value without notice. On or about the 18th or 19th of July, 1950, Shepherd Motor Company contacted appellee Pike in Carthage, Texas, and offered the four trucks for sale. Pike immediately went to Arkadelphia and purchased from Shepherd Motor Company the trucks in question for a price of $1,650 each. Pike gave four checks, each in the sum of $1,650 to Shepherd Motor Company. These checks were drawn on the First National Bank of Carthage by appellee Pike. Shepherd and his employees delivered to Pike, in Arkadelphia, a bill of sale and invoice for each of the four trucks. He immediately moved the four trucks to Carthage, his home, a Mr. Ed Hammock also went to Carthage with the four checks given to Shepherd by Pike. The papers delivered by Shepherd to Pike were turned over to the First National Bank of Carthage who was to finance the purchase of the trucks acquired from Shepherd Motor Company. The bank officer, Mr. Black, examined the papers delivered to Pike by the Shepherd Motor Company and its employees and immediately called the Texas Highway Department at Austin to determine whether such papers were sufficient to secure the issuance of certificate of title for each of said trucks, and was informed by the Highway Department that the papers were sufficient, and certificates of title have been issued by said Department covering said trucks. Mr. Black then checked with Shepherd Motor Company at Arkadelphia by telephone as to whether Ed Hammock was properly in possession of said checks, and being informed that he was, he issued a Cashier's check in the amount of the four checks presented by Hammock. The trucks were later sold or traded to different parties in and around Carthage. It is appellants' contention that the facts and circumstances in the record refute the idea that appellees are innocent purchasers of said trucks for value, without notice of any rights of appellants. The following from 37 Tex.Jur., p. 477, is cited by appellants: "In other words, a buyer can be so regarded only in the event that he has acted in good faith and has paid a valuable consideration for a legal title, without notice of the rights of other persons in the subject-matter. He is protected 'because he has expended his money * * * relying upon an apparent situation reasonably calculated to mislead him, which the real owner has created or at least has permitted to continue to exist. On that account, it is inequitable to require such purchaser, rather than the real owner, to suffer the attending loss." We regard the above quotation as the correct rule with respect to innocent purchaser. The facts are as stated above, that appellee Pike was notified by Shepherd that he had the four trucks for sale. He went to Ar-

kadelphia, determined that the trucks were new and were worth the money, and he bought them from Shepherd and received from him and his employees bills of sale for the trucks. Pike had dealt with Shepherd on previous occasions in the purchase of motor vehicles and had no previous trouble with respect to title to the cars or anything else. The trucks were new, as he testified, and the court so found. Pike received all the papers from the apparent owners that were necessary in the purchase of new motor vehicles. True, he made no inquiry of Shepherd or his employees about their rights to sell the vehicles, and as we view the record there is nothing that would excite inquiry on his part, and certainly appellee First National Bank of Carthage made all the inquiry necessary to determine the regularity of the papers delivered to Pike by the Shepherd Motor Company. The trial court found that: "Neither of the defendants (appellees) at the time of the purchase of the motor vehicles had any knowledge or information of the private agreement between the plaintiffs (appellants) herein and the Shepherd Motor Company relative to the attempted reservation of title in the motor vehicles sold to Shepherd Motor Company nor of the checks given by said Shepherd Motor Company for the price of the vehicles in question to the plaintiff for the purchase price of the motor vehicles. The plaintiff trusted the motor vehicles in question to the possession of the Shepherd Motor Company, and thereby put it within the power of the Shepherd Motor Company to dispose of the same to anyone, and in this case to the defendants herein, who had no notice of plaintiff's claim to the motor vehicles, and, therefore, plaintiff was negligent in so parting with the motor vehicles to Shepherd Motor Company in the manner it did. The partners of the Broadway Car Company were also partners in the Ritz Television Company, and the court finds that the transaction by the plaintiffs with the Ritz Television Company for the motor vehicles in dispute was a subterfuge and a simulated deal, in an effort by plaintiff to make the motor vehicles 'used' or 'secondhand' motor vehicles, when they were 'new' or 'unused' motor vehicles, or had the appearance of so being." Based upon the above findings of fact the trial court concluded as a matter of law "that the vehicles were 'new' and unregistered at the time they were sold by plaintiffs (appellants) to Shepherd Motor Company, the validity of the sale was not dependent upon the assignment or transfer of a certificate of title for each or either of the motor vehicles. The defendants (appellees) purchased the motor vehicles from A. O. Shepherd—Shepherd Motor Company—for full value and without notice or knowledge of any title, claim or interest in the plaintiffs (appellants) and are therefore bona fide purchasers for value without notice. "The sale from A. O. Shepherd of Shepherd Motor Company to Elbert Pike was a first sale and passed good title to the motor vehicles * * *. The plaintiffs delivered possession of the motor vehicles with such indicia of ownership to Shepherd Motor Company so as to estop the plantiffs from recovering against the defendants, who purchased the motor vehicles from the Shepherd Motor Company for full value and without notice of any claim, title or interest in plaintiffs. The plaintiff who had means of protecting itself and failed to avail itself of such protection, must suffer loss occasioned by A. O. Shepherd—Shepherd Motor Company—as against the defendants, who had no means of protection, and are innocent purchasers for value without notice. As the plaintiff by its negligence and negligent transaction with Shepherd Motor Company enabled the latter to perpetrate a fraud on plaintiff, the loss must be sustained by the plaintiffs as against the defendants who are innocent purchasers for value without notice."

 The above findings of fact and conclusions of law of the trial court are sustained by the record, and we think place this case squarely under the rule cited above from Texas Jurisprudence. In our opinion the cases of General Motors Acceptance Corp'n v. Bettes, Tex.Civ.App., 57 S.W.2d 263 (writ refused), as well as Scruggs et al. v. Crockett Automobile Co., Tex.Civ.App., 41 S.W.2d 509 (w./d), support the conclusions of the trial court in its disposition of this feature of the case. Clearly, we think,

under the record here appellants by turning the cars over to Shepherd and permitting him to bring them to the State of Arkansas from Chicago, Illinois, clothed Shepherd with such indicia of ownership as to constitute all persons purchasing said motor vehicles from him for value and without notice, as innocent purchasers.

All other points advanced by appellants have been examined and are overruled.

The judgment of the trial court is affirmed.