## MILLS v. CLARK et al.

No. 14613.

Court of Civil Appeals of Texas. Dallas.

April 3, 1953.

Rehearing Denied May 8, 1953.

Jones, Phillips & Watkins, Dallas; for appellant.

Dick P. Wood, Dallas, for appellees.

YOUNG, Justice.

Appellant's suit in the trial court against defendants Robbins, John Clark, d/b/a Clark-Parker Used Cars, and Vincent Elton was for repossession of a new 1950 Buick 4-door automobile; alleging an unlawful conversion through Robbins; also that petitioner was induced to part with the possession thereof by false and fraudulent representations made by Robbins; otherwise alleging "false pretext" on part of the latter in which all defendants were involved. No service being obtained on C. V. Robbins, nonsuit was taken as to him at inception of trial. On conclusion on the evidence, the Court withdrew the case from the jury and entered a take nothing judgment against plaintiff, from which order this appeal has been duly prosecuted.

The automobile in question was placed in hands of a receiver who sold same under order of Court for $2,000; which amount the parties agreed to as its reasonable market value; the Court's judgment ordering delivery of said proceeds to defendant Clark.

A resume of the material facts leading up to filing of suit is in order, taken solely from testimony of appellant: On Nov. 21, 1949 Kenneth Mills, d/b/a Mills Motor Company, Buick automobile dealer at Farmersville, Collin County, was owner of above described car by purchase from the Buick Company, Dallas Division, evidenced by manufacturer's certificate. On the previous Saturday, Robbins, a used car dealer, had phoned plaintiff from Dallas, wanting to buy the particular model car with immediate delivery. Mills assented, telling Robbins to send his customer on up to Farmersville the following Monday and the deal would be consummated; that he would have refused to sell directly to a used car dealer; that he wanted the transaction handled in name of an individual and registered in Collin County, being thereby enabled to gain credit with his dealer for a retail sale; stating at the time that his (Robbins') check in payment would be "perfectly satisfactory." Robbins then sent his employee Kennedy to Farmersville with an application for Texas certificate of title in name of a Sally Armstrong, showing a lien in favor of First National Bank in Dallas, along with personal check for $2,250, price of the car. Plaintiff thereupon signed over, with acknowledgment, first form of the manufacturer's certificate to Sally Armstrong; similarly filling out the application for Texas certificate of title, delivering all instruments together with the new car to Kennedy, who in turn delivered the Robbins check. Concurrently plaintiff instructed Kennedy to file these papers (manufacturer's certificate and application for certificate of title) in McKinney, Collin County; also to register the new car there in name of Sally Armstrong. Kennedy did this, returning the described receipts and title papers to Robbins at Dallas.

In the meanwhile and before Nov. 21, Robbins had planned a resale of the car to defendants Clark and Parker, contacting

Clyde Hopkins, an employee, who arranged for the purchase, providing Robbins would deliver same, together with necessary title papers and license receipt. Hopkins first made the application for title receipt to himself as purchaser, showing lien in favor of Clark Investment Company; Robbins then reporting that the Buick dealer (Mills) would not permit registration of car in name of a used car dealer or his salesman. It was then that Hopkins instructed Robbins to use the name of Sally Armstrong, a lady living in his apartment, who had theretofore given him (Hopkins) permission to buy and sell cars in her name. Robbins immediately brought the car to the sales lot of Clark and Parker, Dallas, and after inspection of the property, the papers being in form as requested, payment was made through Hopkins by Parker's check for $2,087.50. The car was sold to defendant Elton on same day on trade-in of another car, the latter applying for and later obtaining a Texas certificate of title. The record does not reflect any knowledge by defendants at time of these last transactions of any dissatisfaction on part of appellant.

Appellant deposited the Robbins check for $2,250 at his local bank, same being charged back to his account on November 28, payment refused by the Dallas Bank on which it was drawn. And bearing on the unqualified acceptance of this check by Mills, excerpts from his testimony are here quoted:

"Q. (By Mr. Jones): At the time you talked with Mr. Robbins about accepting the check, what, if anything, did he tell you about whether the check was good or not? A. He just asked if he could send his personal check, and I said, 'Yes sir,' it would be perfectly all right to send his check up there. * * *

"Q. So that, you delivered to Mr. Kennedy possession of the automobile, and all of the evidence of title to that same car, did you not? A. That's right. * * *

"Q. When you received that check from C. V. Robbins, that is offered in evidence, did you call the Grove State Bank to see if that check was good? A. No sir, because I presumed it was good. * * *

"Q. Could you have withheld the title on this car, just kept it in your safe and delivered him the car, until you got cash money for the car? A. Yes sir, I could, but I didn't know any reason to do that, because I thought his check was good. * * *.

"Q. Mr. Mills, as a matter of fact, you could have, if you had had any question about that check, you could have retained a lien for the amount of your sale price to Robbins when you assigned the manufacturer's certificate, and you could have retained a first lien in the certificate of title, could you not? A. I could, but I had confidence in the check.

"Q. Yes sir. You had had enough previous dealings with Mr. Robbins that you were satisfied with his checks? A. I had had some dealings with him, yes sir. * * *

"Q. You didn't take this check on the day you received it or the next day to the bank and ask for payment? A. I had been in Dallas on that previous night, when I went by to see him, and spent the night here.

"Q. So, after getting his check you were in Dallas? A. Oh, yes.

"Q. And you could have gone by the Grove Bank and presented the check? A. I didn't think it was necessary."

Points on appeal are three: Error of court in withdrawing case from the jury and entering judgment that plaintiff take nothing, (1) "since the evidence showed appellant was the owner of the automobile and entitled to possession thereof"; (2) "since the evidence showed that appellant was not estopped to assert his ownership of said automobile against appellee, John Clark, who was not a bona fide purchaser"; (3) "since the evidence showed that appellant was not estopped to assert his ownership of said automobile against appellee, Vincent Elton, who was not a bona fide purchaser."

Appellant first contends that his automobile and title thereto were taken from him pursuant to a scheme or under the pretense "that the check appellant was given by Robbins was good and would be paid on presentment and further that same was being purchased by Sally Armstrong and that the First National Bank at Dallas would have a lien on said automobile * * *"; thus constituting theft by pretext. But, if theft be not established, that both Clark and Elton are not bona fide purchasers and not entitled to protection as such; each having purchased "in direct opposition and conflict with the title certificate act"; with information at time of their purchases that the car had been acquired from Mills Motor Company "from whom inquiry should have been made to determine his claim, if any." Further lack of bona fides on part of Clark is argued in the following: That undisputedly, Hopkins, his agent, knew, when paying for the automobile, that Robbins had not made application for title in his own name as required by the Title Certificate Act; and did not have in his possession a receipt showing that application for title had been made in name of Hopkins, from whom the car was being purchased; that Hopkins also knew Robbins had acquired the automobile from Mills Motor Company and made no inquiry of either Robbins or appellant concerning the latter's interest in same; Hopkins also not receiving a certificate of title to the car at the time he paid Robbins and took possession thereof.

■ Under the history of all transactions between the parties, as hereinabove outlined, the following conclusions are sufficient answer to the contentions made: (1) Since all the evidence shows that appellant voluntarily delivered possession of the Buick car and all muniments of title to another automobile dealer (Robbins), he has failed to establish a suit for conversion under the commonly accepted definition of that term. 42 Tex.Jur., pp. 507, 512, 540; American Mortgage Corporation v. Wyman, Tex.Civ.App., 41 S.W.2d 270; Victoria Bank & Trust Co. v. Monteith, 138 Tex. 216, 158 S.W.2d 63, Com.App.

■ (2) There is argument to effect that the issue of theft by pretext is raised merely because the Robbins check was returned account of "insufficient funds"; citing Bomar v. Insurors Indemnity & Ins. Co., Tex.Sup., 242 S.W.2d 160, 163, in support. Clark and Elton continued as bona fide purchasers on this score; they unquestionably having no notice that the Robbins transaction was other than a completed sale. Appellant made no investigation of the check, and even after the subsequent sales (Sally Armstrong through Clark to Elton), original seller Mills still assumed "that the check was good." Appellant could have protected himself against any insufficiency of check by either of several ways suggested in the evidence; but, on strength of said check, turned over to Robbins every indicia of ownership. It would appear therefore that the exception stated in Bomar v. Insurors Indemnity & Ins. Co., supra, and not the general rule there applied, is controlling of the instant facts. The Court goes on to say: "The contention of respondent is answered effectively by the language of this Court in McKinney v. Croan, 144 Tex. 9, 188 S.W.2d 144, 146(8, 9), where it is said: 'We recognize that ordinarily where one clothes another with the indicia of ownership of personal property, he may be estopped to assert title to the property as against a purchaser from one having such indicia of title. * * * But in order for such a rule to be applicable *there must be some negligent or wrongful act or omission on the part of the true owner conferring on the person selling the goods the appearance of ownership.*" (Emphasis ours.)

■ (3) It is stressed that at time Clark and Parker bought the Buick car from Robbins, the latter did not apply for a certificate of title in his own name; such constituting noncompliance with the Act, sec. 8, Art. 1436-1, Vernon's Ann.P.C. As already stated, the subject of sale was a new automobile, having never been transferred or registered. Mills was a new car dealer, Robbins and Clark also being dealers. The certificate of title Act under

its express terms, Art. 1436–1, sec. 4, excludes the necessity of applying for title by a dealer *until after the first sale.* " * * * we are of the opinion that manufacturers and dealers who use their vehicles only for the purposes so permitted are not required to secure a certificate of title from the State Highway Department as a condition precedent to the right to transfer such a vehicle." Motor Inv. Co. v. Knox City, 141 Tex. 530, 174 S.W.2d 482, 485. See also Nicewarner v. Alston, Tex.Civ.App., 228 S.W. 2d 872; Gerber v. Pike, Tex.Civ.App., 249 S.W.2d 90.

(4) Although appellant knew car in question was being sold to a Dallas dealer, it was on his own initiative that same was transferred to an "individual" and registered in Collin County. Notwithstanding this, it is further argued that since the individual was actually a person designated by Clark and Parker to hold title for them, no title passed by the transaction, and in consequence appellant is still the owner. The Act, Art. 1436–1, P.C., "does not prohibit the registration of a motor vehicle in the name of one other than the true owner, nor render the title invalid or prohibit the passing of title in such event. It merely provides, after the first sale the title shall pass and vest only by a transfer of the certificate of title, Sec. 33, by the owner designated in the certificate of title. 'Owner designated,' indicates an owner may be different from the true owner." Pioneer Mut. Compensation Co. v. Diaz, Tex.Civ.App., 178 S.W.2d 121, 123, affirmed 142 Tex. 184, 177 S.W. 2d 202.

There is no merit to appellant's final proposition that Vincent Elton failed to comply with requirements of the Act in that he did not demand and receive a Texas certificate of title on very day of car purchase. Immediately and as part of the sale to him, he executed an application for Texas certificate of title (thereafter issued by the Department of Public Safety), which procedure was all that was required of him. "We find nothing in the Certificate of Title Act which requires a purchaser of a motor vehicle to obtain a certificate of title from the State Highway Department immediately upon purchasing the vehicle, as contended for by defendants. Section 34 of the Act authorizes an assignee to apply for a new certificate of title, but there is nothing in that section which makes it mandatory that this be done immediately." McKinney v. Croan, 144 Tex. 9, 188 S.W.2d 144, 146. Davis v. Gonzales, Tex.Civ.App., 235 S.W.2d 221.

All points of error, upon examination, are deemed untenable and, in accordance, the judgment under review is in all things affirmed.