**M. R. MURRY et al., Appellants,**

v.

**A. T. KRAFT, Appellee.**

No. 3339.

Court of Civil Appeals of Texas.
Waco.

Feb. 23, 1956.

Rehearing Denied April 5, 1956.

Beard, Kultgen & Nokes, Waco, for appellants.

W. S. Barron, Bryan, for appellee.

TIREY, Justice.

Appellee brought his suit for the conversion of a new automobile heretofore unregistered, and this is an appeal from the order overruling defendants' pleas of privilege to be sued in the counties of their respective residences. The cause was tried without the intervention of a jury and there was no request for findings of fact and conclusions of law and none filed.

Appellants assail the order entered on three grounds. They are substantially: (1 and 3) because the appellee failed to prove that the Ford was his property and failed to tender any evidence to the effect that appellants were guilty of a crime or trespass in Brazos County, Texas; and (2) because appellee failed to prove that his claim to the Ford was superior to Interstate's lien. (We think this last point is pertinent only to the merits and that is not before us).

A statement is necessary.

In August 1954, Ed Cross was in the business of a used car dealer, with his place of business located in Bryan, Texas. M. R. Murry was Waco Branch Manager of Interstate Securities Company, whose home office was located in Dallas County, Murry's residence being in McLennan County. On August 12, 1954, Murry, in behalf of his company, advanced money to Cross on a Ford automobile, taking a note payable to his company, secured by chattel mortgage on the Ford. The chattel mortgage provided that the mort-

gagee should have the power to seize the Ford at private sale in the event Cross failed to pay the note. The manufacturer's certificate on the Ford was delivered to Interstate and the certificate was initialed by Interstate's representative and returned to Ed Cross. No notation of Interstate's lien was made upon the certificate. The certificate showed title to the Ford to be in Ganus Motor Company at Hillsboro. On August 21, 1955, Ed Cross borrowed money from appellee, using the same Ford as security. This loan was repaid. On October 5, 1955, Cross again borrowed money from Kraft. Kraft took a chattel mortgage on the Ford and took possession of the manufacturer's certificate, but Kraft's lien was never noted on the manufacturer's certificate, this certificate still showing title to be in Ganus Motor Company. Interstate's loan was never repaid by Cross. Its note was payable on demand. On February 26, 1955, Interstate, acting through Murry, demanded that its note be paid. Cross refused. Interstate then took possession of the Ford from Cross' lot in Bryan. The Ford was immediately brought to Waco. Evidence was tendered to the effect that Cross consented to this taking, and it is not denied, and neither Interstate nor its agent Murry had notice of either loan made by Kraft on the car. Murry asked Cross for the manufacturer's certificate at the time of the taking and Cross represented that it was in Hillsboro, where he had asked that Ganus Motor Company have the car registered. A few days thereafter Kraft, after discovering that the car was gone, made demand upon Murry for possession. This demand was made by telephone and at the time it was made Murry was in Temple, Bell County, and the car was in Waco, McLennan County, and Kraft was talking from Bryan in Brazos County. This demand was refused and the car has remained in Interstate's possession in Waco. Several days later, the exact time not shown, Kraft took the manufacturer's certificate to Hillsboro and Ganus Motor Company endorsed it to Kraft and Kraft applied for and obtained a Texas certificate of title. Thereafter Kraft brought this suit in the

District Court of Brazos County and alleged that Murry and Interstate had converted the Ford. Murry seasonably filed plea of privilege to be sued in McLennan County and Interstate seasonably filed its plea to be sued in Dallas County. Kraft filed affidavits controverting both pleas. Kraft went to trial on his original petition and his controverting pleas to appellants' pleas of privilege. We think that the original petition and the controverting affidavits each, absent special exception, is sufficient to allege that the Ford car was Kraft's property at the time it was taken by Interstate and Murry. See Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513, points 1 and 2, 141 A.L.R. 50. (In the absence of special exception, a petition will be liberally construed in the pleader's favor).

Pertinent to this discussion the original petition alleged that defendants unlawfully, maliciously and wilfully used force in Brazos County to take possession of the car and the plaintiff elected to sue for his damages, which he alleged to be $1,900, said sum being the reasonable cash market value of the car, and he prayed for such relief. He did not sue for possession of or title to the car. Kraft in his controverting affidavit alleged that the District Court of Brazos County had venue by virtue of the provisions of Subdivision 9 of art. 1955, Vernon's Ann.Civ.Stats., and specifically set out the provisions of Subdivision 9. The controverting affidavit further specifically averred and set out that the automobile "was and is the property of the plaintiff" and it referred to plaintiff's original petition and said that the same was incorporated in the affidavit as though it had been copied. It is true that the plaintiff in his original petition did not specifically allege that he was the owner of the car and had title thereto on February 22, 1955, which was the day the car was delivered by Cross to defendants; however, he did specifically allege: "Plaintiff would further show unto the court that he had been unlawfully deprived of the use of said automobile from or about the 22nd day of February 1955 up to the present time * * *."

Keeping in mind the factual situation here before stated, we think we should state that Ed Cross, the secondhand dealer, was neither a party to the suit, nor was he called as a witness; that Ganus Motor Company was not a party to the suit, nor was anyone from said company called to testify; that there is an absence of testimony showing whether Ganus Motor Company had been fully paid for the car, the record showing only that it had delivered the manufacturer's certificate of title to Cross unendorsed. There is an absence of testimony showing whether Kraft paid any consideration to the Ganus Motor Company at the time it endorsed the manufacturer's certificate of title to him. The record is without dispute that the car was in the possession of Cross on his used car lot and that there was a debt and purported chattel mortgage lien against the car in favor of Interstate Securities Company, of which Kraft had no notice, and Kraft also had a loan and purported chattel mortgage lien on the car which had been placed on it subsequent to the loan in favor of Interstate Securities Company, and neither of the defendants had any notice of the Kraft loan nor the fact that he had the manufacturer's certificate of title in his possession at the time appellants took possession of the Ford. Under this undisputed record, were the appellants guilty of conversion at the time Cross delivered the possession of the car to them? We think they were.

▮ The Certificate of Title Act, art. 1436–1, Vernon's Ann.Penal Code, was enacted by our legislature in 1939 for the purpose of lessening and preventing the theft of motor vehicles and to give the purchasers of cars in both first and second sales a way certain of knowing whether they were getting title to the cars they were purchasing. We also think the legislature had in mind to give to the automobile industry a definite mode of procedure in the sale and transfer of automobiles that would promote and facilitate fair dealings if they were strictly followed. This Act has been construed many times by our Su-

preme Court as well as our Courts of Civil Appeals. See Motor Inv. Co. v. Knox City, 141 Tex. 530, 174 S.W.2d 482; Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S.W.2d 843; Guinn v. Lokey, 151 Tex. 260, 249 S.W.2d 185 (S.Ct.). See also opinions by C.C.A.—Elder Chevrolet Co. v. Bailey County Motor Co., Tex.Civ.App., 151 S.W. 2d 938 (no writ history); Associates Inv. Co. v. National City Bank, Tex.Civ.App., 231 S.W.2d 661 (no writ history); Clade v. National City Bank, Tex.Civ.App., 229 S.W.2d 815 (n. r. e.); State Highway Dept. v. Texas Automotive Dealers Ass'n, Tex. Civ.App., 239 S.W.2d 662 (n. r. e.); Mills v. Clark, Tex.Civ.App., 257 S.W.2d 746 (n. r. e.).

▮ The record here is without dispute that the Ford was a 1954 model and it came within the provisions of the Act of being a first sale—that is to say, it had not been registered pursuant to the terms of the terms of the Certificate of Title Act aforesaid. Sec. 28 of the foregoing Act provides: "No designated agent shall issue a receipt for an application for certificate of title to any new motor vehicle the subject matter of the first sale unless the applicant shall deliver to such agent a manufacturer's certificate properly assigned by the manufacturer, distributor, or dealer shown thereon to be the last transferee to the applicant, upon form to be prescribed by the Department." Sec. 52 provides: "It shall hereafter be unlawful to buy or acquire any title other than a lien in a motor vehicle registered or licensed in this State without then and there demanding of the proposed seller the registration receipt and certificate of title covering the particular motor vehicle which shall, upon consummation of the purchase, be transferred upon such form as may be provided by the Department." Sec. 53 provides: "All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with." In the case at bar the appellants knew that Cross had the manufacturer's certificate of title in his possession at the time it advanced its loan

on the car, but they made no notation on such certificate of the loan. At the time they accepted delivery of the car from Cross they made demand on him to deliver to them the manufacturer's certificate of title. This Cross failed to do, and at the same time advised appellants that it had been sent to Hillsboro for the purpose of having it registered. Although Cross did not tell the appellants the truth about the situation because the certificate of title at that time was in the possession of Kraft, yet it is our view that under the law and strict interpretation of the Certificate of Title Act, Cross was without authority to deliver possession of the car to them, and we are of the further view that when appellants accepted delivery of the car from Cross to them, that he could not legally make delivery of the car to them without delivering the manufacturer's certificate of title. It is also our view that under the Certificate of Title Act that although Kraft had the manufacturer's certificate of title in his possession unendorsed, that his holding of such certificate was such indicia of title that it prevented Cross from making a legal delivery of possession of the Ford to appellant without Kraft's consent. It follows from what we have said that we are of the view that when Cross delivered possession of the car to appellants without the consent of Kraft, under the record here made, that it was without authority and wrongful and that the acceptance and the taking of the car from Brazos County constituted a trespass or conversion under Subdivision 9 of art. 1995, Vernon's Ann.Civ. Stats.

As heretofore stated, the other point raised by appellants involves the merits of the cause and we express no opinion thereon.

Accordingly, the judgment of the trial court is in all things affirmed.