**FIRST STATE BANK OF CORPUS CHRISTI, Texas, Appellant,**

v.

**H. AUSTIN, d/b/a H. Austin Motors, Appellee.**

No. 13363.

Court of Civil Appeals of Texas.

San Antonio.

June 25, 1958.

Rehearing Denied July 23, 1958.

On Further Motion for Rehearing July 30, 1958.

J. R. Sorrell, Corpus Christi, for appellant.

Anderson & Porter, Corpus Christi, for appellee.

POPE, Justice.

This is a suit for the trial of the right of property. H. Austin filed the suit to recover a 1955 Cadillac which First State Bank of Corpus Christi had sequestered. Austin claimed he owned the Cadillac by reason of a valid sale to him by B. J. Hammock. First State Bank claims that the sale from Hammock to Austin was void and that it, the Bank, holds a prior lien against the Cadillac, though not disclosed by the title papers. The trial court granted a summary judgment which approved the validity of Austin's title and denied the priority of the Bank's lien.

Austin claims he purchased the vehicle by force of papers which on their face are entirely proper. In 1955, Dr. H. C. Dones bought the Cadillac from a San Antonio dealer. In March, 1957, he sold the car to Turbiville Motors, a dealer, and surrendered his certificate of title which showed that there were no liens. Turbiville re-assigned the title to Davison Used Cars, who assigned to San Antonio Auto Auction, who in June assigned to Hammock. Each of those assignees is a dealer. On August 24, 1957, Hammock assigned the vehicle to H. Austin, also a dealer. The Certificate of Title, with each of the above reassignments attached, was delivered to H. Austin, and those documents showed that there were no liens against the Cadillac. The documents were in proper order and valid on their face.

Unknown to Austin, some matters had transpired before he purchased the vehicle and before the title documents were delivered to him on August 24. Hammock, on July 5, 1957, borrowed $3,300 from First State Bank and gave his note and a chattel mortgage on the Cadillac. The Bank officer did not retain the Certificate of Title as a means to prevent the sale of the vehicle without payment of the lien, and the Bank's lien was in no way noted or shown on the title papers. Instead, the Bank officer surrendered all the title papers to Hammock, the borrower, who was supposed to have the Bank's mortgage endorsed upon a new title certificate. Hammock, with full possession of the papers which showed no liens, instead of causing the lien to be noted, sold the car to Austin. During August, Hammock loaned the mortgaged Cadillac to the Bank officer who had made the loan, and he used the car to take his family on a two-week vacation trip to

Colorado. Austin knew none of these facts. Four days before the Bank officer returned to Corpus Christi from Colorado, Hammock sold the car to Austin and delivered the title papers to him. On August 28, Hammock delivered the car to Austin.

■ The Bank's point on this appeal is that Hammock, by his personal use of the vehicle, was required to obtain a certificate of title. Ordinarily, a dealer is not required to secure a certificate of title as a condition precedent to the right to transfer a vehicle, and he may transfer the car on a dealer's assignment. Motor Investment Company v. Knox City, 141 Tex. 530, 174 S.W.2d 482; Texas Automotive Dealers Association, Inc., v. Harris County Tax Assessor and Collector, 149 Tex. 122, 229 S.W.2d 787. Bank argues, however, that a dealer, like any one else, must obtain a certificate of title for his personal car, and that from June to August 24, Hammock was using the car for personal purposes. It follows, Bank reasons, that the sale from Hammock on a dealer's assignment instead of on a certificate of title was void.

■■ Austin bought the Cadillac from a dealer, and he did not know of the dealer's personal use of the car. Hammock, a dealer, gave Austin a dealer's assignment which was valid on its face. Bank's argument means that a purchaser is under a duty to investigate the dealer's prior use of a vehicle. It means that the validity of the title will depend upon the purchaser's correct judgment that such use is or is not personal use as distinguished from dealer use. It means that a purchaser who does not make that investigation of the dealer's use takes the title papers at his own risk even though they disclose no liens. The whole purpose of the Act would thus be defeated. Section 1, Article 1436–1, Penal Code, declares that the legislative intent and public policy of this State is to prevent "the sale of encumbered motor vehicles * * * without the enforced disclosure to the purchaser of any and all liens for which any such motor vehicles * * * stands as security, and the provisions hereof, singularly and collectively, are to be liberally construed to that end." In the face of this declared policy, we shall not so construe the Act that undisclosed liens will have priority because a purchaser did not cross-examine a dealer to determine the extent of any personal use of the vehicle. The money lender may protect himself by retaining the title papers in his possession or by causing a lien to be noted upon the papers. Titles to vehicles and the priority of liens do not rest in parol, but upon the title documents. Commercial Credit Co. v. American Mfg. Co., Tex.Civ.App., 155 S.W.2d 834, 838; Associates Investment Company v. National City Bank of Waco, Tex.Civ.App., 231 S.W.2d 661; 18 A.L.R. 2d 813.

The judgment is affirmed.

#### On Motion for Rehearing.

In our original opinion we stated that Hammock delivered the car to Austin on August 28. Appellant has correctly pointed out that the record fails to show this fact. This, however, does not change the result of the case.

The motion for rehearing is overruled.